## UNITED TELECOMMUNICATIONS, INC. (FORMERLY UNITED UTILITIES INCORPORATED), PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7866-72.    Filed November 10, 1975.

*William H. Curtis, George F. Crawford,* and *Allan W. Stopperan,* for the petitioner.

*Joe K. Gordon,* for the respondent.

OPINION

The sole issue presented for our decision is one of first impression. It is (for purposes of computing the qualified investment on which the section 38 credit against tax is calculated): is the petitioner entitled to include in the basis of self-constructed telephone and power plant properties that qualify as new section 38 property the capitalized depreciation of property used in its construction? [2]

United contends that the term "basis," as used in section 46(c)(1)(A) [3] with respect to the "qualified investment" upon which section 38 allows a credit against income tax, and as used in section 48(b) [4] defining "new section 38 property," should be given its general and ordinary meaning. Petitioner rightly states that the economic basis of its constructed properties includes amounts of depreciation on assets used by petitioner to construct those capital assets and improvements. *Commissioner v. Idaho Power Co.,* 418 U.S. 1 (1974). Therefore, United argues, because there is no indication that Congress meant to give "basis" as used in the pertinent sections any other definition than its normal meaning, that portion of section 1.46-3(c)(1), Income Tax Regs., emphasized below is invalid as being contrary to the statute:

[2] To promote simplicity, this opinion hereafter refers only to petitioner though it was petitioner's subsidiaries which constructed the new sec. 38 property.

[3] SEC. 46(c). QUALIFIED INVESTMENT.—
    (1) IN GENERAL.—For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year, the aggregate of—
        (A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year
        * * *

[4] SEC. 48(b). NEW SECTION 38 PROPERTY.—For purposes of this subpart, the term "new section 38 property" means section 38 property—
    (1) the construction, reconstruction, or erection of which is completed by the taxpayer after December 31, 1961, or
    (2) acquired after December 31, 1961, if the original use of such property commences with the taxpayer and commences after such date.
In applying section 46(c)(1)(A) in the case of property described in paragraph (1), there shall be taken into account only that portion of the basis which is properly attributable to construction, reconstruction, or erection after December 31, 1961.

Sec. 1.46-3(c) *Basis or cost.* (1) The basis of any new section 38 property shall be determined in accordance with the general rules for determining the basis of property. Thus, the basis of property would generally be its cost * * * and would include all items properly included by the taxpayer in the depreciable basis of the property * * * *However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to any other property used in the construction, reconstruction, or erection of such new section 38 property.* [Emphasis supplied.]

Respondent has broad authority to effect the purpose of the statute by promulgating regulations. *Commissioner v. South Texas Co.,* 333 U.S. 496 (1948). Where, as with the investment credit provisions, Congress has specifically given respondent authority to prescribe regulations necessary to carry out the statute's purpose,[5] respondent's regulations are entitled to a heavy presumption of validity. *Fawcus Machine Co. v. United States,* 282 U.S. 375 (1931); *Robert E. Catron,* 50 T.C. 306, 309 (1968). However, the statute always remains the primary authority and to the extent respondent legislates, thereby exceeding his authority to interpret the statute, his promulgation is void. *Manhattan Co. v. Commissioner,* 297 U.S. 129 (1936); *Boykin v. Commissioner,* 260 F. 2d 249 (8th Cir. 1958), modifying 29 T.C. 813 (1958); *Northern Natural Gas Co. v. O'Malley,* 277 F. 2d 128 (8th Cir. 1960); *Fabian Tebon, Jr.,* 55 T.C. 410 (1970).

In examining the challenged portion of section 1.46-3(c)(1), Income Tax Regs., quoted above, in the light of sections 46(c)(1)(A), 47(a)(1), and 48(b), we conclude that the regulation is valid in part and invalid in part.

The Revenue Act of 1962, 76 Stat. 960, added to the Internal Revenue Code of 1954 the investment credit against income tax. Subject to certain limitations, the amount of investment credit allowed by section 38 is generally 7 percent of the taxpayer's "qualified investment." Sec. 46(a)(1). "Qualified investment" with respect to new section 38 property, the kind here involved, is defined by section 46(c)(1)(A). This section provides that such qualified investment is equal to an applicable percentage of the taxpayer's basis in new section 38 property. The applicable percentage depends upon the estimated useful life of the new section 38 property as set forth in section 46(c)(2).[6]

---

[5] Sec. 38(b).

[6] Because the constructed sec. 38 property in this case has a useful life of more than 8

In applying section 46(c)(1)(A) to constructed section 38 property, the statute places only one restriction on the meaning of "basis" and that restriction is contained in section 48(b). "Basis" is limited to that portion of the basis which is properly attributable to construction, reconstruction, or erection after December 31, 1961.

Both the House and Senate technical explanations of the bill contain identical statements regarding the basis of new section 38 property, as follows:

> The basis of "new section 38 property" is to be determined under the general rules for determining the basis of property. Thus, the basis of property purchased or constructed would generally be its cost. * * * [7]

Thus, it appears that Congress intended to make no distinction between purchased or constructed new section 38 property regarding the meaning of "basis," and furthermore, that Congress intended "basis" to be used in its general and ordinary sense; i.e., "cost." See sec. 1012.

With respect to qualified investment in used section 38 property, the statute's treatment of "basis" confirms that Congress meant to use "basis" regarding new section 38 property in its general and ordinary sense as discussed above.

In defining qualified investment in used section 38 property, section 46(c)(1)(B) employs the term "cost" rather than the term "basis." Section 46(c)(1)(B) places on the "cost" of used section 38 property includable in qualified investment the same percentage limitations (defined by section 46(c)(2) according to useful life) as those placed on the "basis" of new section 38 property by section 46(c)(1)(A). "Cost" is defined by section 48(c)(3)(B), and differs significantly from the term "basis" as used by section 48(b).

Section 48(c)(3)(B) mandates a reduction in the basis of used section 38 property which is acquired as a replacement for, and is similar or related in use or service to used section 38 property disposed of by the taxpayer by the amount of the adjusted basis of the property disposed of.[8] The amount determined after such

---

years, the petitioner is entitled to include in qualified investment 100 percent of its basis in the property. However, because petitioner is a public utility, its qualified investment is limited to three-sevenths of this amount by sec. 46(c)(3).

[7] H. Rept. No. 1447, 87th Cong., 2d Sess., 1962-3 C.B. 405, 505; S. Rept. No. 1881, 87th Cong., 2d Sess., 1962-3 C.B. 707, 847.

[8] See Sec. 1.48-3(b)(2), Income Tax Regs., where application of the reduction in basis

reduction in basis is the "cost" of the used section 38 property that is used to compute qualified investment. Section 48(c)(3)(B) also excludes from "cost" so much of the basis of the acquired used section 38 property as is determined by reference to the adjusted basis of other property held at any time by the taxpayer acquiring the used property. However, where there has been a recapture of investment credit pursuant to section 47 with respect to the property disposed of, the two foregoing restrictions on basis that are applied to determine cost are not applied. Sec. 1.48-3(b)(3), Income Tax Regs.; see also examples contained in sec. 1.48-3(b)(4), Income Tax Regs.

The report of the Senate Finance Committee explains these provisions as follows:

> To prevent a double allowance where used property is traded in on used property, or where used property is disposed of (otherwise than by casualty or theft) and other used property "similar or related in service or use" is acquired as a replacement, the cost otherwise allowable for the used property acquired is reduced by the adjusted basis of the property disposed of in both of these types of cases.[9]

With respect to the cost of used section 38 property includable in qualified investment, and thus eligible for the section 38 credit, it is clear that Congress sought to prevent a doubling effect of the credit by restricting the meaning of basis. It is also clear that Congress did not place these restrictions on the basis of new section 38 property.[10]

Congress intended the investment credit as a stimulus to encourage capital investment by reducing the net cost of acquiring assets. Regarding the economic effect of the credit, the report of the Senate Finance Committee stated the following:

> The objective of the investment credit is to encourage modernization and expansion of the Nation's productive facilities and thereby improve the economic potential of the country, with a resultant increase in job opportunities and betterment of our competitive position in the world economy. The objective of the credit is to reduce the net cost of acquiring new equipment; this will have the effect of increasing the earnings of new facilities over their productive lives and increasing the profitability of productive investment. It is your committee's intent that the financial assistance represented by the credit

---

has been limited to replacements made within a 60-day period preceding or following the disposition.

[9] S. Rept. No. 1881, *supra*, 1962-3 C.B. at 721-722; to the same effect see the report of the House Ways and Means Committee at 1962-3 C.B. 415.

[10] Compare subsecs. (b) and (c)(1) and (3) of sec. 48.

should itself be used for new investment, thereby further advancing the economy. Only in this way will the investment credit fully serve the overall national interest in greater productivity, a healthy and sustained economic growth, and a better balance in international payments.[11]

Consistent with the overall policy to stimulate the economy, Congress enacted section 47(a)(1) to provide against those abusive cases where the sole inducement to dispose of and acquire section 38 property was the investment credit. Both the House and Senate committee reports indicate that the primary purpose of this recapture provision was—"To guard against a quick turnover of assets by those seeking multiple credit." [12]

The effect of section 47 is to allow a double credit to the extent no recapture is effected. Recapture is effected only to the extent the estimated useful life of the asset was longer than its actual life or service. Sec. 47(a)(1); sec. 1.47-1(a)(2)(i), Income Tax Regs. Thus, if section 38 property is disposed of or otherwise ceases to be section 38 property prior to the termination of its estimated useful life for purposes of determining qualified investment under section 46(c), then in the year of disposition or cessation, a recomputation of qualified investment must be made by applying section 46(c)(2) to the actual number of years the property was used by the taxpayer as section 38 property. If the recomputation results in a decrease of investment credit allowable with respect to that property, then the taxpayer must increase his tax or reduce his investment credit carryover by the amount of the decrease. Sec. 47(a)(1) and (3); sec. 1.47-1(a)(1)(i), Income Tax Regs.

For example, if the estimated useful life of new section 38 property is 7 years, the section 38 credit is computed on the qualified investment determined by section 46(c) to be equal to two-thirds of its basis. If the asset is traded in for new section 38 property after 5 years, the credit on the property traded is recomputed as if its actual life were 5 years. Thus, the credit is still allowed on the qualified investment which is equal to one-third of its original basis. Secs. 47(a)(1), 46(c). Moreover, the

---

[11] S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 717-718. The reports of both the House Ways and Means Committee and the Conference Committee on the Revenue Act of 1962 are to the same effect. See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 411, 412; Conf. Rept. No. 2508, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 1129, 1142.

[12] H. Rept. No. 1447, *supra*, 1962-3 C.B. at 417; S. Rept. No. 1881, *supra*, 1962-3 C.B. at 724.

credit is allowed on the total purchase price of the new section 38 property acquired, limited only by the applicable percentages of section 46(c)(2) according to its useful life. Therefore, to the extent the basis of the new section 38 property is determined by reference to the basis of the property traded, on which there is partial or no recapture, there is a double allowance of the credit. To the extent investment credit is recaptured, there is no double allowance.

Respondent maintains that petitioner's position requires a result that effectively grants a double investment credit: first on the basis of acquired qualified property; second on the basis of that same property to the extent it is capitalized as construction-related depreciation and included as a construction cost in the basis of constructed section 38 property. Petitioner argues that, even so, there is no statutory support for respondent's regulation which is unreasonable in its definition of the basis of constructed section 38 property for determining qualified investment.

The key to resolution of the issue in the instant case is found in the definition of "section 38 property" contained in section 48(a)(1). This section provides that "section 38 property" means, inter alia, tangible personal property, but includes "only property with respect to which depreciation * * * is allowable and having a useful life * * * of 4 years or more." Thus, if in a given taxable year a depreciation deduction is not allowable on property, then that property ceases to qualify as section 38 property. Sec. 1.48-1(b)(1), Income Tax Regs.

If petitioner employed section 38 property to construct its own capital assets and all the depreciation on that section 38 property were construction related in a given taxable year, then all that depreciation would have to be capitalized and could not be allowed as a deduction. *Commissioner v. Idaho Power Co.,* 418 U.S. 1 (1974). The obvious conclusion is that the section 38 property used in the construction would cease to qualify as section 38 property. Section 47(a)(1) would then require a recapture of credit according to the property's actual term of service as section 38 property. However, the basis of the constructed capital asset would include the construction-related depreciation. If the constructed capital asset qualified as new section 38 property, then its basis, including the capitalized depreciation, would be used in computing qualified investment according to its estimated useful life.

.The respondent's regulations take a different tack. Regulations section 1.48-1(b)(4) [13] provides that for purposes of qualifying as section 38 property, any property with respect to which a depreciation deduction is not allowed in a given taxable year because it must be capitalized, nevertheless shall be treated as property on which a depreciation deduction is allowable in the current year. Under this regulation, no investment credit on section 38 property used solely in the construction of the taxpayer's own capital assets is recaptured.

Though it is less than conceptually correct, this regulation is eminently reasonable and consistent with the statute. Without such treatment, gross abuses would be allowed to flourish. As long as some depreciation would be allowable, the property would continue to qualify as section 38 property. For example, taxpayers could use section 38 property for construction of their own capital assets 11 months a year and for other purposes during the 12th month. Because some depreciation would be allowable, there would be no recapture of credit. Moreover, the construction-related depreciation capitalized in the basis of the constructed asset would be eligible for the section 38 credit, assuming the constructed asset qualified. Section 1.46-3(c)(1) of the regulations is designed specifically to prevent this abuse, and to that extent is reasonable and consistent with the statute's purpose.[14]

However, regulations section 1.46-3(c)(1) goes too far. This regulation prohibits the petitioner from including in the basis of constructed section 38 property, for purposes of determining

---

[13] Sec. 1.48-1(b)(4), Income Tax Regs.:

If depreciation sustained on property is not an allowable deduction for the taxable year but is added to the basis of property being constructed, reconstructed, or erected by the taxpayer, for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable for the taxable year with respect to the property on which depreciation is sustained. Thus, if $1,000 of depreciation sustained with respect to property no. 1, which is placed in service in 1964 by taxpayer A, is not allowable to A as a deduction for 1964 but is added to the basis of property being constructed by A (property no. 2), for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable to A for 1964 with respect to property no. 1. However, the $1,000 amount is not included in the basis of property no. 2 for purposes of determining A's qualified investment with respect to property no. 2. See paragraph (c)(1) of section 1.46-3.

[14] We are mindful of the case where sec. 38 property on which the investment credit has been allowed is used to construct sec. 38 property only during part of the year for valid business reasons. In such a case the statute does not exclude the applicable capitalized depreciation from the basis of the constructed sec. 38 property *for purposes of determining qualified investment.* However, we think that the potential for abuse is great enough to support the respondent's regulation regarding sec. 38 property on which the investment credit has been allowed.

qualified investment, all construction-related depreciation with respect to any property.

We think that construction-related depreciation with respect to assets with useful lives of less than 4 years or to assets acquired prior to January 1, 1962, should be properly included in the basis of constructed section 38 property for purposes of determining qualified investment. No investment credit has been allowed with respect to these assets and, therefore, the abuse-prevention scheme of regulations sections 1.46-3(c)(1) and 1.48-1(b)(1) and (4) is inapplicable.

Although neither party has called it to our attention, we note that the legislative history of new section 46(d), added to the Code by the Tax Reduction Act of 1975, Pub. L. 94-12 (Mar. 29, 1975), contains language at odds with the legislative history of the investment credit as enacted by the Revenue Act of 1962 and with our holding herein. New section 46(d) introduces to the investment credit provisions the term "qualified progress expenditures" by which a taxpayer may, at his election, increase his qualified investment by these "expenditures" as defined by section 46(d)(3).

In partial explanation of these "expenditures," the House and Senate committee reports accompanying the Tax Reduction Act of 1975 contain identical language as follows:

qualified progress expenditures would not include any depreciation sustained with respect to other property (machinery, equipment, etc.) used in the construction of new section 38 property (because such depreciation is not part of the basis for purposes of section 38), * * * [H. Rept. No. 94-19, 94th Cong., 1st Sess. 38 (1975); S. Rept. No. 94-36, 94th Cong., 1st Sess. 46 (1975).]

We think the parenthetical remarks quoted above deserve little weight. As the Supreme Court has said, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313 (1960); see also *Waterman Steamship Corp. v. United States,* 381 U.S. 252, 268, 269 (1965); *United States v. United Mine Workers,* 330 U.S. 258, 281-284 (1947); cf. *Biddle v. Commissioner,* 302 U.S. 573, 582 (1938). However, we have not altogether disregarded the statements, and we have treated them as "a secondarily authoritative expression of expert opinion." *Bobsee Corp. v. United States,* 411 F. 2d 231, 237 n. 18 (5th Cir. 1969).

We note that the statute itself does not change the definition of "new section 38 property" contained in section 48(b), discussed *supra,* nor does it change the meaning of "basis" as used in section 46(c)(1)(A) concerning qualified investment. What the statute does do is liberalize the definition of "qualified investment," at the taxpayer's election, with respect to constructed new section 38 property. Certain amounts invested in constructed new section 38 property now may be added to qualified investment prior to the placement of the property in service. Compare sec. 46(c)(1)(A) with sec. 46(d)(4). Section 46(d) is effective for taxable years ending after December 31, 1974.

As we have pointed out, the legislative history of the investment credit at the time of its enactment states without reservation that the basis of new section 38 property is to be determined under the general rules for determining basis, i.e., cost. See n. 7 *supra,* and accompanying text. We think this language must prevail to the extent a conflict exists between it and the parenthetical remarks in the House and Senate committee reports on new section 46(d) because it evolved out of the deliberations and debates which gave birth to the whole statutory scheme of the investment credit. Moreover, the use of "basis" in the definition of new section 38 property (sec. 48(b)) and in the definition of "qualified investment" (sec. 46(c)(1)(A)) has remained unchanged since those sections were first enacted by the Revenue Act of 1962.

When the investment credit was "restored" (Revenue Act of 1971, 85 Stat. 497) after it had been terminated (Tax Reform Act of 1969, 83 Stat. 487), Congress adopted the prior statutory scheme intact with three major changes unrelated to the issue here. H. Rept. No. 92-533, 92d Cong., 1st Sess. 24 (1971); S. Rept. No. 92-437, 92d Cong., 1st Sess. 17 (1971). ((1) The useful life brackets for determining qualified investment under section 46(c)(2) were each shortened by one year. (2) Restrictions were placed on the eligibility of foreign-produced machinery and equipment for the credit. (3) Public utility property was made eligible for a 4-percent rather than a 3-percent credit.) Thus, in "restoring" the investment credit, Congress relied substantially and predominantly on the thought and examination given to the investment credit provisions by its predecessor. We see no good reason why we should not do likewise.

It should also be noted that because the investment credit provisions were enacted expressly to encourage investment in and modernization of facilities and equipment by reducing the net cost of acquiring assets, this Court and others have held that the investment credit provisions are to be liberally construed. *Northville Dock Corp.,* 52 T.C. 68 (1969); *Robert E. Catron,* 50 T.C. 306 (1968); *Minot Federal Savings & Loan Assn. v. United States,* 435 F. 2d 1368 (8th Cir. 1970); *Norfolk Shipbuilding & Drydock Corp. v. United States,* 321 F. Supp. 222 (E.D. Va. 1971).

In view of the foregoing analysis and with due regard to the weighty presumption of its validity, we are compelled to hold that portion of the regulations quoted in the footnote [15] to be unreasonable and plainly inconsistent with the statute, but only to the limited extent that it excludes from basis for purposes of determining qualified investment in new section 38 property, the construction-related depreciation attributable to property on which no investment credit has been allowed.

To the extent that the regulation is concerned with construction-related depreciation attributable to section 38 property on which an investment credit has been allowed, it is valid.

Because of concessions,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

WILBUR, *J.,* concurring: This case concerns the application of the investment credit provisions to self-constructed property whereby a taxpayer uses property A to self-construct property B. Even though property A and property B meet the statutory definition of qualified property, the regulations deny a "double credit" by requiring that the credit be taken on property A and that the basis of property A be excluded from property B for purposes of computing the investment credit on property B. While hardly free from doubt, the regulations are not plainly

---

[15] Sec. 1.46-3(c)(1), Income Tax Regs.:

However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to *any* other property used in the construction, reconstruction, or erection of such new section 38 property. [Emphasis supplied.]

inconsistent with the statute.[1]

The regulation in question (sec. 1.46-3(c)(1)) provides:

(c) *Basis or cost.* (1) The basis of any new section 38 property shall be determined in accordance with the general rules for determining the basis of property. Thus, the basis of property would generally be its cost (see section 1012), unreduced by the adjustment to basis provided by section 48(g)(1) with respect to property placed in service before January 1, 1964, and any other adjustment to basis, such as that for depreciation, and would include all items properly included by the taxpayer in the depreciable basis of the property, such as installation and freight costs. *However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to any other property used in the construction, reconstruction or erection of such new section 38 property. (See paragraph (b)(4) of section 1.48-1)* * * [Emphasis added.]

The majority broadly construes this regulation to exclude from the basis of self-constructed property (property B) *any* depreciation on other property (property A) used in the construction process. When the other property (property A) used in self-constructing assets does not qualify for the investment

---

[1] If property B is purchased, the taxpayer will get the full credit on property B. The purchase price of property B in a competitive environment will reflect a passthrough of the investment credit on property A that the manufacturer has used in manufacturing property B. If the manufacturer's markup is ignored, a taxpayer may, by purchasing rather than self-constructing property B, derive the benefit of the credit on both property A and B that he is denied when self-constructing. Additionally, due to the manufacturer's markup, the cost of the tax credits to the Federal Government when the property is purchased may exceed the cost of the credits when the property is self-constructed, although the macroeconomic effects (ignoring those associated with the manufacturer's distribution) would be essentially the same. Thus, it can be argued that the purpose of the credit, as well as the intent to treat those self-constructing property the same as those purchasing property, require that both property A and B qualify for the credit.

However, as pointed out *infra,* the regulations have been in effect for more than a decade during which Congress has suspended, restored, repealed, reenacted, and substantially broadened the credit. Earlier this year the regulations were specifically considered by Congress, and determined to be the rule the statute contemplates. See sec. 46(d), added by Pub. L. 94-12 (Mar. 29, 1975). See also H. Rept. No. 94-19, to accompany H.R. 2166 (Pub. L. 94-12), 94th Cong., 1st Sess. 38 (1975); S. Rept. No. 94-36, to accompany H.R. 2166 (Pub. L. 94-12), 94th Cong., 1st Sess. 46 (1975). Additionally, these arguments can also be made with regard to depreciation, and yet it is clear an individual self-constructing assets can claim depreciation only on the asset he constructs. *Commissioner v. Idaho Power Co.,* 418 U.S. 1 (1974). Admittedly, the method the regulations employ to deny a double credit differs from the method used in reference to depreciation under *Idaho Power,* and this can produce some anomalies. (For example, property A may have a short useful life qualifying for only one-third of the credit, while property B has a longer useful life qualifying for the full credit; only the partial credit for property A is allowed rather than the full credit for property B). But this difference is understandable, since the entire investment credit is claimed in the year an asset is placed in service (rather than over its useful life as in the case of depreciation), and the taxpayer cannot defer claiming the credit because he may later use the asset in self-constructing other property.

credit, this interpretation of the regulation denies any credit, and the emphasized portion of the regulation is therefore declared invalid by the majority.

If this interpretation of the regulation is correct, the regulation is invalid. However, the regulation can and should be construed in pari materia with related provisions of the regulations to achieve the same result without declaring it invalid. Immediately following the sentence the majority invalidates is a specific reference to section 1.48-1(b)(4), Income Tax Regs. Section 1.48-1 deals in its entirety with the definition of "section 38 property," that is, property qualifying for the investment credit. Section 1.48-1(a), in providing a general definition of qualifying property, states that it must be property on which depreciation is allowable. Subsection 1.48-1(b) dealing with the issue of when property otherwise within the definition of qualifying property is property on which depreciation is allowable, states:

(b) *Depreciation allowable.* (1) Property is not section 38 property unless a deduction for depreciation (or amortization in lieu of depreciation) with respect to such property is allowable to the taxpayer for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation, including, for example, the unit of production method and the retirement method as well as methods of depreciation which measure the life of the property in terms of years. If property is placed in service (within the meaning of paragraph (d) of section 1.46-3) in a trade or business (or in the production of income), but under the taxpayer's depreciation practice the period for depreciation with respect to such property begins in a taxable year subsequent to the taxable year in which such property is placed in service, then a deduction for depreciation shall be treated as allowable with respect to such property in the earlier taxable year (or years). Thus, for example, if a machine is placed in service in a trade or business in 1963, but the period for depreciation with respect to such machine begins in 1964, because the taxpayer uses an averaging convention (see section 1.167(a)-10) in computing depreciation, then, *for purposes of determining whether the machine qualifies as section 38 property,* a deduction for depreciation shall be treated as allowable in 1963.

\* \* \*

(4) If depreciation sustained on property is not an allowable deduction for the taxable year but is added to the basis of property being constructed, reconstructed, or erected by the taxpayer, *for purposes of subparagraph (1) of this paragraph* a deduction for depreciation shall be treated as allowable for the taxable year with respect to the property on which depreciation is sustained. Thus, if $1,000 of depreciation sustained with respect to property no. 1, which is placed in service in 1964 by taxpayer A, is not allowable to A as a deduction

for 1964 but is added to the basis of property being constructed by A (property no. 2), for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable to A for 1964 with respect to property no. 1. However, the $1,000 amount is not included in the basis of property no. 2 for purposes of determining A's qualified investment with respect to property no. 2. *See paragraph (c)(1) of section 1.46-3.*
    [Emphasis added.]

Paragraph (b)(1) makes it clear that, while depreciation may not be allowable during the year property is placed in service due to a particular depreciation convention, a deduction for depreciation shall be considered as allowable *for purposes of determining whether the machine qualifies as section 38 property.* Paragraph (b)(4) also makes it clear that, while depreciation on property used to self-construct another asset must be carried over to the self-constructed asset, the property used in the construction process will be deemed depreciable *for purposes of subparagraph (1) of this paragraph. Both* paragraphs assume and deal with a situation where the property used in the construction process is itself section 38 property, rather than nonqualifying property as the majority assumes.

Regulations section 1.48-1(b)(4) and section 1.46-3(c)(1) (invalidated in part by the majority) contain reciprocal cross references. Furthermore, since they both deal with the same matter, they must be construed in pari materia, as it is indeed clear they were intended to be construed. By construing these regulations together, it is clear they were intended only to disallow a double credit and advise the taxpayer which property to claim the credit on rather than to deny any credit at all. Since Treasury regulations constitute contemporaneous constructions by those charged with the administration of the statutes, they must be sustained unless "*plainly* inconsistent" with the statute. This is particularly true where the Commissioner's regulatory authority derives not only from the general rule-making authority granted in section 7805, but also under a specific mandate contained in the statutory provisions being construed. See *William F. Sanford,* 50 T.C. 823, 832 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Properly construed, the regulation is not plainly inconsistent with the statute.

The majority apparently feels that its interpretation of the regulation is not only clear, but clearly inconsistent with the

statute. But if it is clear to the majority, it must have been clear to Congress; and Congress has in the sum total of its actions through the years, clearly indicated that the regulation incorporates the rule of the statute.

Congress has reenacted and expanded provisions of the investment credit with specific knowledge of the construction placed upon the statute by the regulations. The investment credit was added by the Revenue Act of 1962 and amended in the Revenue Act of 1964. The regulations in question were promulgated by TD 6731 on May 7, 1964, and have not been amended since that time. During the 11 years those regulations have been in effect, the investment credit was suspended,[2] restored,[3] repealed,[4] reenacted,[5] and substantially broadened.[6] All of these congressional actions required Congress to deal with basis problems, and no change in the applicable statutory language has occurred during the entire 11-year period the regulations have been on the books.

While this alone might not be enough, in the last legislative action taken by Congress (Pub. L. 94-12 (Mar. 29, 1975)), the rule provided by the regulation was specifically commented upon (in a virtually verbatim restatement), approved, and incorporated in the statute. (Sec. 46(d)(3)). In greatly expanding the investment credit, Congress added provisions to the statute making the credit applicable to certain work in progress, even though the property has not yet been "placed in service." In doing so, the credit was made available for "qualified progress expenditures," defined by the statute (to the extent here relevant) as follows:

(3) QUALIFIED PROGRESS EXPENDITURES DEFINED.—For purposes of this subsection—

(A) SELF-CONSTRUCTED PROPERTY.—In the case of any self-constructed property, the term "qualified progress expenditures" means the amount which, *for purposes of this subpart, is, properly chargeable (during such taxable year) to capital account* with respect to such property. [Emphasis added.]

In explaining what is meant by this statutory language, the committee reports contain the following comment:

---

[2] Pub. L. 89-800 (Nov. 8, 1966).
[3] Pub. L. 90-26 (June 13, 1967).
[4] Pub. L. 91-172 (Dec. 30, 1969).
[5] Pub. L. 92-178 (Dec. 10, 1971).
[6] Pub. L. 94-12 (Mar. 29, 1975).

In the case of self-constructed property (i.e., property where it is reasonable to believe that the taxpayer will bear more than half of the construction costs directly) "qualified progress expenditures" will generally equal the costs incurred by the taxpayer which are *properly chargeable to capital account in connection with that property (for purposes of the investment credit). Thus, qualified progress expenditures would not include any depreciation sustained with respect to other property (machinery, equipment, etc.) used in the construction of new section 38 property (because such depreciation is not part of the basis for purposes of section 38),* nor generally would it include the adjusted basis of reconstructed property at the time the reconstruction is commenced. [H. Rept. 94-19, 94th Cong., 1st Sess. 38 (1975). (Emphasis added.) See also S. Rept. 94-36, 94th Cong., 1st Sess. 46 (1975) (substantially identical language).]

It is therefore clear that Congress has specifically considered the language of the regulation, and declared it is the rule the statute contemplates. Moreover, the language in section 46(d) (when considered in the light of the legislative history) actually incorporates the rule of the regulation.[7]

My quarrel with the majority arises from their willingness to disregard more than a decade of congressional actions subsequent to the promulgation of the regulations in question as well as their implicit assumption that Congress adopted (for purposes of qualifying progress expenditures under new section 46(d)), an unambiguous rule clearly inconsistent with the statute as it then existed.[8] I believe the regulation is ambiguous, and should be read

---

[7] The majority repudiates all of this legislative history on the basis of *United States v. Price,* 361 U.S. 304, 313 (1960), and in this they err. In 1971 Congress amended the definition of property qualifying for the investment credit to include motion picture film, indicating in the legislative history that the prior law was intended to cover film. The Government, citing *Price,* argued that the legislative history of a subsequent Congress was of little value in interpreting a law enacted by a prior Congress. The Ninth Circuit firmly rejected this argument in the following words:

"The government urges that this legislative history is irrelevant because the 1971 Act changed prior law, or at least that the history is entitled to little weight because 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.' United States v. Price, 361 U.S. 304, 313, 80 S. Ct. 326, 332, 4 L. Ed. 2d 334 (1960). However, although the 1971 re-enactment of the investment credit did change prior law in several ways, *see, e.g.,* Revenue Act of 1971, Pub. L. No. 92-178, section 104(c), 85 Stat. 497, 501, it did not change the phrase 'tangible personal property' as used in the 1962 Act, Int. Rev. Code of 1954, section 48(a)(1)(A). And, while subsequent legislative history normally is not of controlling weight, it should not be ignored when it is clearly relevant.

"*In this case we give subsequent legislative history special weight, because the inferences flow not from Congressional action or inaction on amendatory legislation, but from explicit Congressional statements of the meaning of a phrase which was unchanged during the period in question.* * * * [*Walt Disney Productions v. United States,* 480 F.2d 66, 68, 69 (9th Cir. 1973). Citations omitted. Emphasis added.]"
The case before us is clearly within this rationale.

[8] Apparently, under the majority opinion the plain rule of the invalidated regulation which Congress adopted will apply to the new progress expenditure provisions of the investment credit, but not to provisions enacted by previous Congresses. This seems

to preclude only a double credit and not to deny any credit at all on certain property, and that Congress in fact understood the rule in this manner. In discussing the rule of the regulation in issue, Congress noted that the basis of self-constructed property excludes "any depreciation sustained .with respect to other property *(machinery, equipment, etc.)* used in the construction of new section 38 property (because such depreciation is not part of the basis for purposes of section 38)." H. Rept. 94-19, *supra* at 38 (emphasis added). It is hard to believe that Congress, in referring to "machinery and equipment," did not have in mind items themselves qualifying for the investment credit. When Congress used the terms machinery and equipment in other provisions of the investment credit, it contemplated qualifying property. See secs. 48(h)(4)(A) and 48(h)(6).

Additionally, in liberalizing the statute earlier this year, Congress followed the historical practice of treating those who self-construct equipment and facilities on the same basis as those who purchase these items from others. If the majority is correct, and the rule of the regulation Congress referred to and adopted excludes all depreciation of any kind from the basis of self-constructed property, it would be economically disadvantageous to self-construct capital intensive items. This would be clearly inconsistent with the parity of treatment Congress intended, particularly in view of the nature of the assets qualifying for the investment credit.

The majority broadly construes the regulation in question, and then invalidates the regulation as so construed. A narrow construction of the regulation, which accords with the statutory language and underlying purpose, as well as the legislative history, would obviate the problems created in invalidating one part of an interrelated set of regulations. The investment credit provisions are an interrelated set of rules developed over the last 13 years to achieve economic objectives rather than equity in the area of cost recovery. The provisions have been enacted, amended, suspended, restored, repealed, reenacted, and greatly expanded over this 13-year period. Necessarily, legislative action through the years has tied into language added to the Code in

---

anomalous since the statute and legislative history made it clear that the new provisions were carefully integrated with existing provisions, and yet two separate rules regarding the basis of self-constructed assets will apply. See H. Rept. 94-19, *supra* at 40.

earlier years and developed a series of complex and integrated rules that require the interpretation of the investment credit provisions as a whole rather than in fragmented parts. It simply will not work any other way and it is inconsistent with the way Congress has developed the provisions through the years. There is simply no need or cause to invalidate the regulation, which has apparently worked reasonably well through the years and has met with the approval of Congress.

RAUM, TANNENWALD, STERRETT, and QUEALY, *JJ.,* agree with this concurring opinion.