H. LYLE HUDSON AND MAXINE HUDSON, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10665–76.     Filed August 20, 1981.

*C. Don Weston*, for the petitioners.
*Tom P. Quinn*, for the respondent.

OPINION

WILBUR, *Judge*: Respondent determined a deficiency of $1,057.80 in petitioners' 1973[1] Federal income taxes. The issues presented for our decision are:

(1) Whether sales tax may be included in the basis of new section 38[2] property in computing the investment tax credit, and

(2) Whether the trade-in allowance or the adjusted basis of property traded in is utilized in determining the basis of new

---

[1] An earlier order of the Court dismissed this case for lack of jurisdiction insofar as it relates to the taxable year 1974, as no statutory notice of deficiency was sent to the petitioners for that year.

[2] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

section 38 property received in an exchange where no gain or loss was recognized.

All of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

H. Lyle and Maxine Hudson (hereinafter referred to as the petitioners) filed a joint Federal income tax return for the taxable year 1973. At the time of the filing of the petition in this suit, the petitioners were residents of Good Hope, Ill.

Petitioner H. Lyle Hudson was engaged in farming during 1973. In this regard, he purchased several items of farm machinery during the year in question. In each case, he either paid cash or traded in old equipment paying the difference in cash. These transactions are summarized in the chart on page 470.

Petitioners deducted the sales tax paid on each item on Schedule F, Form 1040, under the designation "sales taxes-equipment." Also on the return, petitioners utilized the list price, with no increase for sales tax paid, in determining their adjusted basis for depreciation. However, petitioners included the sales tax in computing the investment credit claimed for each of the properties. Respondent recomputed the basis on each item for investment credit purposes by excluding the sales taxes paid.

Some of the machinery was acquired through nontaxable exchanges of other property, plus the payment of cash. As to these items, petitioners computed their basis for the investment credit as the sum of the trade-in allowance and the amount of cash paid (including the sales tax). Respondent recomputed this amount utilizing the adjusted basis of the property traded in, rather than the trade-in allowance, and also excluding the sales taxes paid.[3]

The parties agree that the items acquired were new when purchased; that they had 7 or more life years; and that the petitioners are entitled to an investment credit on this property at the applicable rate of 100 percent. We are only called upon to determine the basis of the property in order to determine the amount of qualified investment.

---

[3]The respondent has conceded that the petitioners are entitled to claim a qualified investment of $2,615, arising out of the purchase of "tenant farm equipment."

| Type of property | List price | Sales tax paid | Total selling price | Cash paid | Adjusted basis of property traded in | Trade-in allowance | Adjusted basis for depreciation claimed on 1973 return | Basis for investment credit claimed | Basis for investment credit allowed |
|---|---|---|---|---|---|---|---|---|---|
| Tractor A | $17,100.00 | $900.00 | $18,000.00 | $18,000.00 | --- | --- | $17,100.00 | $18,000.00 | $17,100.00 |
| Sprayer | 617.50 | 32.50 | 650.00 | 650.00 | --- | --- | 617.50 | 650.00 | 617.50 |
| Chisel plow | 897.75 | 47.25 | 945.00 | 945.00 | --- | --- | 897.75 | 945.00 | 897.75 |
| Cultivator | 1,175.63 | 61.87 | 1,237.50 | 1,237.50 | --- | --- | 1,175.63 | 1,237.50 | 1,175.63 |
| Grain trailer | 4,062.31 | 213.81 | 4,276.12 | 4,276.12 | --- | --- | 4,062.31 | 4,276.12 | 4,062.31 |
| Mulcher | 2,367.25 | 57.75 | 2,425.00 | 1,270.00 | $102.93 | $1,155.00 | 1,315.18 | 2,425.00 | 1,315.18 |
| Tractor B | 10,182.60 | 105.40 | 10,288.00 | 2,108.00 | 483.60 | 8,180.00 | 2,486.20 | 10,288.00 | 2,486.20 |
| Corn planter | 4,460.25 | 98.75 | 4,559.00 | 1,975.00 | 768.14 | 2,584.00 | 2,644.39 | 4,559.00 | 2,644.39 |
| Pick-up truck | 3,841.09 | 167.94 | 4,009.03 | 2,358.75 | --- | 1,650.28 | 2,190.81 | 4,009.03 | 2,190.81 |
| Plow | 2,945.88 | 86.62 | 3,032.50 | 1,732.50 | 175.00 | 1,300.00 | 1,820.88 | 3,032.50 | 1,820.88 |

Petitioners purchased several pieces of farm equipment during the taxable year 1973. In each case, a portion of the purchase price included sales tax which the petitioners currently deducted on their Federal income tax return and excluded from their basis in the property for depreciation purposes. However, petitioners included the sales tax as part of their basis in the assets for purposes of computing the investment tax credit. Respondent recomputed the basis for purpose of the investment credit by excluding the sales tax.

On some of the purchases, petitioners traded in used farm equipment and paid the difference in cash. In computing the investment tax credit on these items, petitioners included in their basis the full trade-in allowance of the equipment traded in. Respondent's computation included only the adjusted basis of the property exchanged. The sales tax controversy applies to these items as well.

Section 38(a) allows a credit for investment in certain depreciable property. Section 46(a)(2) states that the amount of the credit is 10 percent of the qualified investment. Qualified investment is defined in section 46(c)(1) as the applicable percentage of the basis of each section 38 property. The parties agree that the applicable percentage here is 100 percent; and that the property is new section 38 property. The only unknown element in this equation is the basis of the assets purchased.

The general rules for determining the basis of property begin with section 1012 which states that the basis of property shall be the cost of such property except as otherwise provided in certain subchapters. Section 1.46–3(c)(1), Income Tax Regs., provides in part:

(c) *Basis or cost.* (1) The basis of any new section 38 property shall be determined in accordance with the general rules for determining the basis of property. Thus, the basis of property would generally be its cost (see section 1012), unreduced by * * * any * * * adjustment to basis, such as that for depreciation, and would include all items properly included by the taxpayer in the depreciable basis of the property, such as installation and freight costs. * * *

Section 1016(a)(1)(A) requires that adjustment to basis be made for expenditures properly chargeable to capital account, but no adjustment is allowed for taxes described in section 266 which are deducted by the taxpayer. Conversely,

(c) Adjustment to basis shall be made for carrying charges such as taxes * * * , with respect to property * * * which the taxpayer elects to treat as chargeable to capital account under section 266, rather than as an allowable deduction. * * * [Sec. 1.1016–2(c), Income Tax Regs.]

Section 266 denies a deduction for taxes the taxpayer elects (under regulations prescribed by the Secretary) to charge to capital account. Sales taxes fall within the coverage of this section. Sec. 1.266–1(b)(1)(iii)(c), Income Tax Regs. In essence, section 266 is a disallowance provision which denies deductibility, but only if an election to capitalize the taxes is made. Implicit in the statute is the denial of a double tax benefit; one cannot both deduct the sales taxes and recover them through depreciation by increasing the basis of the property acquired. The sole effect of section 266 is to permit an election to capitalize sales taxes even though they would otherwise be deductible under section 164(a)(4).[4]

The regulations are crystal clear in providing that basis for investment credit purposes is to be determined in accordance with the rules generally applicable for determining basis for depreciation and other purposes. The regulations are equally clear that in the absence of an appropriate election pursuant to section 266 to capitalize rather than deduct sales taxes, sales taxes may not be capitalized. Here, petitioners deducted the sales taxes having made no election to capitalize. Since under the rules generally applicable in determining basis the sales tax in issue may not be included in basis, petitioners' method of computing the investment credit is erroneous.

Some of the transactions involved the trade-in of old equipment plus cash in exchange for the new equipment. In these transactions, petitioners used the full trade-in allowance of the property given up in computing their basis in the new property for the investment tax credit. Respondent disagrees, arguing that only the adjusted basis of the property given up (plus cash paid to the sellers) should be included in the basis.

---

[4]The election to treat the sales tax as chargeable to capital account must be exercised by filing a statement of election with the original return for the year for which the election is made. Sec. 1.266–1(c)(3), Income Tax Regs. That these rules are to be strictly adhered to is exemplified by *Smyth v. Sullivan*, 227 F.2d 12 (9th Cir. 1955), where capitalization was refused since no election was filed with the return, even though no deduction was taken for the items. In the present case, no statement of election was attached to the return. Additionally, the sales tax was deducted currently and not included in basis for depreciation purposes. We think it is clear that no election to capitalize was ever made.

The parties have stipulated that these were nontaxable exchanges, and no gain or loss from these transactions was reported on petitioners' Federal income tax return for 1973. Thus we approach this problem assuming section 1031[5] to be applicable.

The regulations are very clear in stating that:

If new section 38 property is acquired in exchange for cash and other property in a transaction described in section 1031 in which no gain or loss is recognized, the basis of the newly acquired property for purposes of determining qualified investment would be equal to the adjusted basis of the other property plus the cash paid. * * * [Sec. 1.46–3(c)(1), Income Tax Regs.]

This language conforms to the substituted basis approach of section 1031(d) and the nonrecognition provisions generally, and clearly prevents an allowance for investment credit purposes of a basis greater than the basis of the property traded in plus any other acquisition costs properly chargeable to capital account. We must, therefore, also sustain respondent on this issue.

It is true that sales taxes are a part of the economic costs incurred in acquiring property, whether they are capitalized or expensed. It is also true that in certain circumstances, property traded in may have been held long enough so that the investment credit recapture provisions would be inapplicable to a disposition; or, put another way, the property may have been held for the full period contemplated by Congress in granting the credit. Despite this, where a trade-in is involved, the regulations require that basis of the newly acquired property be reduced to the extent the value of the property traded in exceeds the taxpayer's depreciated basis.

Nevertheless, we note that the regulations, in applying the general rules for determining basis to the investment credit area (sec. 1.46–3(c)(1), Income Tax Regs., *supra*), simply adopt

---

[5]Sec. 1031(a) provides in relevant part:

SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVEST-
MENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business * * * is exchanged solely for property of a like kind to be held * * * for productive use in trade or business * * *

the language of the committee reports and thus reflect the intent of Congress.[6] Undoubtedly, this provides administrative ease and simplifies to some degree a law that might otherwise be inordinately complex. We note that this policy of Congress regarding basis, reflected in the regulations, has remained intact for the last decade and a half, during which the investment credit provisions have been enacted, amended, suspended, restored, repealed, reenacted, and greatly expanded. See *United Telecommunications, Inc. v. Commissioner*, 589 F.2d 1383, 1389 (10th Cir. 1978), affg. 65 T.C. 278 (1975), Supplemental Opinion 67 T.C. 760 (1977), cert. denied 442 U.S. 917 (1979). And, of course, petitioners, although indirectly questioning the wisdom of the regulations, have never placed their validity in issue in these proceedings.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

GOFFE, *J.*, concurring: Because I was the author of the concurring and dissenting opinion in *Zuanich v. Commissioner*, 77 T.C. 428 (1981), I feel constrained to file a concurring opinion in this case to explain why I view the majority opinion as being consistent with my opinion in *Zuanich*.

In the instant case, petitioners deducted the sales tax they paid when they acquired the farm equipment on which they claimed the investment credit. I agree with the reasoning and the holding of the majority that by deducting the sales tax the petitioners are precluded from including it in the basis for purposes of the investment credit. If petitioners had, instead, capitalized the sales tax, the question would arise (but does not herein because the sales tax was deducted) as to whether petitioners would be entitled to the investment credit for the sales tax. I conclude that they should be.

The basis of the asset upon which the investment credit is

---

[6]See H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 505; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 847. See *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278, 282 (1975), Supplemental Opinion 67 T.C. 760 (1977), affd. 589 F.2d 1383 (10th Cir. 1978), cert. denied 442 U.S. 917 (1979).

allowed is specified in section 1.46–3(c)(1), Income Tax Regs., as follows:

> (c) *Basis or cost.* (1) The basis of any new section 38 property shall be determined in accordance with the general rules for determining the basis of property. Thus, the *basis of property would generally be its cost (see section 1012), unreduced by the adjustment to basis* provided by section 48(g)(1) with respect to property placed in service before January 1, 1964, *and any other adjustment to basis,* such as that for depreciation, and would *include* all items properly included by the taxpayer in the depreciable basis of the property, such as installation and freight costs. \* \* \* [Emphasis supplied.]

Section 1012 is the general rule for determining basis and forms the springboard from which basis is determined for various taxable events. The general rule is that basis is cost. However, section 1016 provides for adjustments to basis. Because section 1016(a)(1)(A) provides that no adjustment shall be made to basis for taxes and other carrying charges described in section 266 for which the taxpayer has taken a deduction in the current taxable year, there is a clear implication that sales taxes are not considered a part of the taxpayer's cost under section 1012.[1] That is the rationale which I view as appropriate to the holding of the majority in the instant case.

In my view, the majority's result in the instant case is correct because the sales tax is not part of the asset's cost under section 1012 nor is it an adjustment to basis under section 1016(a)(1)(A) by virtue of its deduction. Accordingly, the taxpayer's investment in qualified property does not include the sales tax. See sec. 1.46–3(c)(1), Income Tax Regs. When, however, a taxpayer elects to capitalize the sales tax, he may elect to treat the capitalized amount as a part of his original cost for purposes of section 1012 or treat it as an upward adjustment to basis under section 1016(a). See sec. 1.1016–2(c), Income Tax Regs. Under either approach, the capitalized sales tax becomes part of the taxpayer's qualified

---

[1]This implication is further buttressed by the regulations issued under sec. 266. Sec. 1.266–1(b)(1), Income Tax Regs., provides:

(b) *Taxes and carrying charges.* (1) The taxpayer may *elect,* as provided in paragraph (c) of this section, to treat the items enumerated in this subparagraph \* \* \* *either as a component of original cost or other basis,* for the purposes of section 1012, *or as an adjustment to basis,* for the purposes of section 1016(a)(1). \* \* \* [Emphasis added.]

If the sales tax paid on the purchase of an asset were inherently includable in the sec. 1012 concept of cost, then it would not be necessary to "elect" such treatment.

investment and, consequently, is subject to the investment tax credit. If treated as original cost under section 1012, the capitalized sales tax fits neatly within the language of section 1.46–3(c)(1), Income Tax Regs. If, however, the capitalized taxes are treated as an upward adjustment to basis, the result is less' obvious. Section 1.46–3(c)(1), Income Tax Regs., prohibits taking into account downward adjustments to basis for purposes of the investment tax credit. It was on this basis that I concluded the adjustments to basis required by the Merchant Marine Act in *Zuanich* did not affect the taxpayer's ability to claim an investment tax credit. Section 1.46–3(c)(1), Income Tax Regs., however, does not prohibit *upward* adjustments to basis. In my view, capitalized sales taxes are proper upward adjustments for pupozes of the investment tax credit. Cf. sec. 1.1016–2(c), Income Tax Regs. This view is strengthened by the last phrase of section 1.46–3(c)(1), Income Tax Regs., quoted above, "The basis * * * would include all items properly included by the taxpayer in the depreciable basis of the property, such as installation and freight costs." Accordingly, the net effect of whether a taxpayer elects to treat sales taxes as part of the original cost under section 1012 or as an upward adjustment to basis under section 1016(a) will not affect his ability to claim the investment tax credit for sales tax.[2]

IRWIN and HALL, *JJ.*, agree with this concurring opinion.

---

[2]I realize that from a purely conceptual or economic viewpoint, the result reached in the majority opinion here and in my opinion in *Zuanich* are not easily reconcilable. That this discrepancy exists does not mean that either position is wrong, but, rather, that an application of the Code in these circumstances produces inconsistent economic treatment.

In *Zuanich* and the present case, we are dealing with three distinct categories of tax provisions designed to foster certain congressional aims. These categories are (1) the investment tax credit provisions, (2) treatment of sales tax provisions, and (3) the ordinary income account provisions of the Merchant Marine Act (MMA). There is no indication in either the statutory provisions themselves or the legislative history that Congress contemplated the interrelationship between the investment tax credit and either sales taxes or the ordinary income account. Rather, Congress had independent purposes for enacting those various schemes.

Congress enacted the investment tax credit as an incentive to spur investments in certain types of property. Legislative history indicates two possible approaches for analyzing how this is accomplished: (1) By reducing the cost of the property or (2) by reducing the purchasing taxpayer's tax liability. Regardless of which analysis is accepted as correct, the end result is the same—the taxpayer acquires the property for less.

In *Zuanich*, this Court dealt with the ordinary income account provisions of the Merchant Marine Act which Congress enacted to promote the American merchant marine. In short, a

taxpayer is entitled to reduce taxable income by an amount equal to his contribution in that year to an ordinary income account established under the MMA. The apparent cost extracted under the provisions of the MMA from a taxpayer in exchange for this right is the forbearance of depreciation deductions (via a reduction in depreciable basis) in later years when cash from the fund is used to purchase certain types of property. The cost of the property to the taxpayer is affected only to the extent of the time value of this accelerated deduction. I am aware of nothing indicating that Congress intended to extract an additional cost in the form of the forbearance of the investment tax credit. In addition, it is apparent from the majority opinion in *Zuanich* that strict statutory construction also does not impose such an additional cost.

The sales tax provisions provide taxpayers with the benefit of deducting currently a portion of the cost of certain assets. (Cost, at least in an economic and probably in an accounting sense, includes items such as sales taxes, installation costs, and freight costs. If a taxpayer cannot acquire an asset unless he pays a sales tax, the sales tax is an economic cost of the property.) The Code sections dealing with sales taxes also extract a cost from the taxpayer in exchange for the benefit of current deductibility. This cost, as in the case of the ordinary income account, is the forbearance of greater depreciation deductions in later years. Again, the cost of the property to the taxpayer is affected only to the extent of the time value of this accelerated deduction. Here, too, I am aware of nothing indicating that Congress intended to extract an additional cost in the form of forbearance of the investment tax credit. However, the fact remains that, as pointed out in the text of this concurring opinion, the taxpayer choosing to currently deduct sales taxes falls neatly within the Code and the accompanying regulations which results in extracting this additional cost. Although I seriously doubt whether Congress ever fully considered this issue, I conclude that the result reached by the majority is the correct one under the Code.

Thus, there is economic discrepancy between the results reached in my opinion in *Zuanich* and the majority opinion here, but it is a discrepancy required by the MMA and the applicable tax provisions and, thus, an appropriate one.