**ILLINOIS VALLEY PAVING COMPANY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 81–2928.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1982.

Decided Sept. 16, 1982.

Theodore C. Rammelkamp, Jr., Rammelkamp, Bradney, Hall, Dahman, Kuster & Collins, Jacksonville, Ill., for petitioner-appellant.

Thomas A. Gick, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge and FOREMAN,* Chief District Judge.

PER CURIAM.

Taxpayer Illinois Valley Paving Company wanted to acquire two new roadbuilding machines manufactured by CMI Corporation. For a number of sound economic reasons, however, the Paving Company did not want to assume the risks inherent in the initial purchase of the machines. For example, one of the machines was not yet approved for public roadbuilding projects in Illinois and would have to be tested in the field by Illinois officials. Another risk to be avoided was that the complex machines might not work properly once assembled. Apparently CMI did not offer a suitable trial period with its machines, because the Paving Company did business instead with the Puffer Company, a heavy-equipment leasing company and a manufacturer's representative for CMI. The Puffer Company agreed to purchase the two machines from CMI and then lease them for a short period to the Paving Company with options for the Paving Company to buy the machines at the end of the leases.

The first machine lease was for four months at $13,500 per month, with an option to purchase the first machine at the end of the lease period for $189,116. The second machine lease was the same except that it was for three months at $12,000 per month and the optional purchase price was $176,423. Both leases provided that if the purchase option was exercised, the monthly lease payments would be applied toward the purchase price. According to plan, the Puffer Company bought both machines and leased them to the Paving Company. Following satisfactory completion of the lease terms, the Paving Company purchased the machines pursuant to its options. The entire transaction was accomplished within the Paving Company's 1975 tax year.

The dispute here is whether the taxpayer Paving Company should be allowed an in-

* The Honorable James L. Foreman, Chief District Judge for the Southern District of Illinois, is sitting by designation.

vestment tax credit for its lease-purchase of the two machines. The Paving Company and the Commissioner agree on the relevant statutory framework. Section 38 of the Internal Revenue Code of 1954, 26 U.S.C. § 38, provides for a credit against income tax of various amounts determined by reference to Code Sections 46 through 48, and empowers the Secretary of the Treasury to promulgate any needed regulations in connection with the investment credits. In 1975, the relevant credit was defined to be ten percent of the taxpayer's "qualified investment." 26 U.S.C. § 46(a)(1)(A) (as added by § 2(b), Revenue Act of 1962, Pub. L.No. 87–834, 76 Stat. 960 and amended by § 301(a), Tax Reduction Act of 1975, Pub. L.No. 94–12, 89 Stat. 26). "Qualified investment" in turn was defined as the applicable percentage of the cost of each item of "new section 38 property" placed in service by the taxpayer during the taxable year. 26 U.S.C. § 46(c)(1)(A) (as added by § 2(b), Revenue Act of 1962, supra). Finally, Section 48(a) & (b)(2), 26 U.S.C. § 48(a) & (b)(2) (as added by § 2(b), Revenue Act of 1962, supra), defined "new section 38 property" as long-living, depreciable, personal property acquired after December 31, 1961, "if the original use of such property commences with the taxpayer" after that date.

The general rule quilted from the above statutes is that only the first user of new equipment gets the tax credit. An exception to the general rule is Section 48(d)(1), 26 U.S.C. § 48(d)(1) (as amended by § 108(c), Revenue Act of 1971, Pub. L.No. 92–178, 85 Stat. 497 and § 302(c)(3), Tax Reduction Act of 1975, supra), which provides in pertinent part:

(d) Certain leased property.—

(1) General rule.—A person * * * who is a lessor of property may (at such time, in such manner, and subject to such conditions as are provided by regulations prescribed by the Secretary or his delegate) elect with respect to any new section 38 property * * * to treat the lessee

as having acquired such property for an amount equal to—

    (A) * * * the fair market value of such property * * *.

This provision allows a lessor of new property to pass through the investment tax credit to the lessee. The applicable Treasury Regulation provides that an election is made by filing a written statement with the lessee on or before the due date of the lessee's return for the lessee's taxable year during which the property is transferred to the lessee. Treasury Regulation § 1.48–4(f)(1) and (2). The election is irrevocable. Treasury Regulation § 1.48–4(f)(3). Both the lessor and lessee are required to retain copies of the election as part of their records, and the lessor must attach to his income tax return a summary of all property leased during the taxable year for which the tax credit is ceded. Treasury Regulation § 1.48–4(j).

The Puffer Company did not claim an investment tax credit for its purchase of the machines, nor did it elect under Section 48(d)(1) to pass through the credit to the Paving Company. The Paving Company, however, claimed a tax credit of $52,520.89 at the time it filed its 1975 tax return. Upon audit, the Commissioner disallowed the credit and assessed a $14,703.43 deficiency in the Paving Company's payment of 1975 income taxes. The Paving Company then petitioned the Tax Court for a redetermination of the asserted deficiency.

Before the Tax Court the Paving Company argued primarily that it was entitled to the tax credit as the original user of the roadbuilding machines because it was the first to use the equipment for building roads. (Actually, the taxpayer made two, more technical claims to the same effect: that the lease-purchase agreements were really conditional sales contracts, or alternatively, that the machines were not placed in service until the taxpayer had exercised its purchase options.) The Tax Court held instead that the Puffer Company was the

original user of the machines as a part of its leasing business and denied the claimed credit. 42 T.C.M. 909, 915 (CCH 1981).

■ The Paving Company raises two issues on appeal.** First, it contends the Tax Court was wrong to determine that it was not the original user of the machines. We disagree. There is nothing absurd in the Tax Court's factual finding that road-building equipment was "used" originally in the Puffer Company's leasing business rather than in the Paving Company's roadbuilding operations. As the Tax Court held in *Haddock v. Commissioner*, 70 T.C. 511, 514 (1978),

In the absence of an election under section 48(d) * * *, a lessor is eligible for the investment tax credit on the same terms as other taxpayers [footnote citing legislative history omitted]. For any taxpayer to be able to claim the credit with respect to new section 38 property, the original use of that property must commence with that taxpayer. It follows, then, that the original use of leased property generally commences with the use by the lessor, which generally is use by the lessor in its leasing operations. Use by the lessee, then, generally is not "original use * * * with the taxpayer" that qualifies the property as new section 38 property.

See also *Kansas City Southern Railway v. Commissioner*, 76 T.C. 1067, 1119–1125 (1981); Treasury Regulation § 1.48–2(b)(7) ("original use" defined as "the first use to which the property is put, whether or not such use corresponds to the use of such property by the taxpayer"). Indeed, the provision of Section 48(d)(1) allowing a lessor to pass through the investment credit to a lessee would be superfluous if a lessor could not be the "original" user of property in the course of its leasing business. Until the Paving Company exercised its options to purchase the machines, the machines were in the service of the Puffer Company's leasing business. By the time the Paving

---

** An *amicus* brief in support of the Paving Company's contentions was filed by Hoeffken Brothers, Inc.

Company exercised its options, it was too late to be the original user.

■ Second, the Paving Company argues that it should be excused from the election requirement of Section 48(d)(1). The Paving Company claims that someone ought to be permitted a tax credit for investment in the two machines, and that since the Puffer Company has not claimed the credit (nor could Puffer claim the credit once it had sold the machines, see Treasury Regulation § 1.46–3(a)(2); 26 U.S.C. § 47(a)(1)), the Paving Company should be allowed the credit. Moreover, the Paving Company claims that in cases such as this there could be no abuse of the credit because only one taxpayer is claiming it and the entire transaction occurred within a single tax year.

It is clear that the Paving Company could have claimed the credit if the Puffer Company had made a Section 48(d) election. It is unclear why Puffer did not make the election and thereby cede the credit. According to the Treasury Regulations cited above, the election could be made as late as the date on which the Paving Company's tax return was due, some six months after the Paving Company purchased the machinery, and it is conceivable that the Paving Company would have been given an extension of time for securing the election had it requested one. See Rev.Rul. 79–415, 1979–2 Cum.Bull. 22 ("An extension of time for filing an election to pass through an investment credit to a lessee of section 38 property will be granted * * * to a lessor who failed to make an allowable election due to an oversight, did not claim the credit on its income tax return, acted promptly upon discovering the oversight, and acted at all times in a manner consistent with the intent to treat the lessee as purchaser of the property for investment credit purposes."); Rev.Rul. 79–63, 1979–2 Cum.Bull. 578; Rev.Rul. 79–414, 1979–2 Cum.Bull. 21. The Puffer Company should gladly have helped a potential repeat-customer such as the Paving Company to minimize taxes, especially when Puffer could have done so at no cost. Even if Puffer were recalcitrant at making the election, the fault lies with the Paving Company for not making trans-

fer of the tax credit a part of the initial bargain to lease and purchase the machines. The Paving-Puffer contract should have provided that if the Paving Company exercised its purchase options, the Puffer Company would cede the credits.

All this, however, is said with the benefit of hindsight and a thorough reading of the tax code and regulations. No doubt at the time the Paving Company was negotiating the purchase of these machines, it was much more concerned with getting the one machine certified by the State of Illinois for use on public road projects and getting both of them to work. At the time the Paving Company filed its 1975 tax return, its tax preparer may have thought the Section 48(d) election was unnecessary; the first case to decide that "original use" of leased property commences with a lessor who has used the property in his leasing business— *Haddock, supra*—had not yet been decided. It is unfortunate that most citizens and many small businesses cannot know what their taxes are without the help of sophisticated lawyers or accountants, and it is also unfortunate that the latter are sometimes unable to discern the Commissioner's position. But these provisions of the tax code are no more complex than most, and this Court cannot refuse to enforce them on the ground they were incomprehensible to or overlooked by the taxpayer.

■ Congress expressly conditioned transfer of the investment tax credit from lessor to lessee upon the lessor making an election in accordance with regulations prescribed by the Secretary or his delegate. The Secretary subsequently promulgated reasonable regulations regarding the form and timing of the election. The regulations are not so burdensome that we can engraft our own exceptions upon them whenever it may appear the Congressional purpose of motivating capital investment will be disserved. Congress delegated such power to the Secretary, not to us. Since the Paving Company has failed to comply with the conditions precedent to allowance of the credit, we must affirm.

Affirmed.