JOHN E. EGIZII AND HELEN EGIZII, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 30018-83.          Filed March 25, 1986.

*T. Kent Cochran*, for the petitioners.
*Michael W. Bitner*, for the respondent.

---

## OPINION

PARR, *Judge*: * Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1978 in the amount of $27,757.60. The sole issue for decision is whether John E. Egizii (petitioner) or his wife, Helen Egizii, (collectively petitioners) manufactured or produced certain personal property so as to allow them to claim an investment credit under section 46(e)(3)(A),[1] governing noncorporate lessors.

## FINDINGS OF FACT

This case was submitted for decision without trial pursuant to Rule 122. All of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioners are husband and wife. They resided in Springfield, Illinois, at the time they filed the petition in this case. Petitioners timely filed their joint Federal income tax return for the taxable year 1978 with the Kansas City Service Center.

Petitioner John E. Egizii has been involved in the wholesale marketing of alcoholic beverages since 1945. His initial involvement in this regard was in a partnership known as E & F Distributing, which partnership was succeeded by a sole proprietorship (of which petitioner was the owner) which operated under the name of John E. Egizii d.b.a. E & F Distributing. In 1960, this sole proprietorship was incorporated as E & F Distributing Co. (E & F), which corporation remains in operation.

During the year 1977, and for some time prior thereto, E & F operated as a distributor for Miller Brewing Co. (Miller) out of an office and warehouse facility located at 412-26 North Fifth Street, Springfield, Illinois. During the year 1977, petitioners were contacted by officials of Miller and informed that in order for E & F to retain its Miller

---

*By his order, this case was reassigned from Chief Judge Samuel B. Sterrett to Judge Carolyn Miller Parr.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

distributorship, E & F would have to construct a new warehouse facility subject to specifications approved by Miller.

Because E & F did not have the necessary funds to construct the warehouse, John and Helen personally undertook the financial obligations necessary for such project. On November 16, 1977, they entered into a contract with Evans Construction Co., d.b.a. DBC, (Evans) for the construction of a new office and warehouse facility to be located at 1030 North Grand Avenue West, Springfield, Illinois (the warehouse).

At no time during the construction of the warehouse and its component parts were either of the petitioners involved in the actual physical labor necessary for such construction, nor were either of the petitioners present on a day-to-day basis at the construction site. Neither of the petitioners had any control over the hiring by Evans, or any subcontractors, of the individuals employed to construct the warehouse or its component parts. Petitioners were involved in the construction of the warehouse in the following ways:

A. weekly contacts with the supervisory personnel of Evans in regard to the status of such construction;

B. weekly on-site inspections with the supervisory personnel of Evans and representatives of Miller in regard to the progress of such construction, and any difficulties which were being met by Evans or any of its subcontractors in complying with the contract specifications; and

C. upon petitioners' receipt of a progress report from Evans, wherein a demand was made for payment for that portion of the construction which had been completed, petitioners would consult with an employee of the architect, The Design Build Collaborative, Inc., to ascertain that the construction was being completed pursuant to the contract specifications and that payment was warranted.

Included in the construction of the warehouse were the following items of tangible personal property, at the indicated cost to petitioner:

| Item | Cost to petitioners |
|------|---------------------|
| Refrigeration unit | 38,774 |
| Extra cooler equipment | 12,673 |
| Office carpet | 2,576 |

The refrigeration unit and extra cooler equipment were installed in the warehouse pursuant to the specifications of Miller and were designed for E & F's storage of kegs of beer.

The materials used by Evans in the construction of this equipment, along with the office carpet, were obtained by Evans from third-party manufacturers in which petitioners held no economic interest.

The construction of the warehouse was completed during August 1978. On October 1, 1978, petitioners leased the warehouse to E & F for 1 year, subject to automatic extensions, for $79,200.00 per year, to be paid in monthly installments of $6,600.

On their income tax return for the taxable year 1978, petitioners claimed an investment tax credit (ITC) in the amount of $27,757.60, based upon the following items:

| Item | Reported cost to petitioners | Investment credit |
|------|------------------------------|-------------------|
| Refrigeration equipment | $275,000 | $27,500.00 |
| Office carpet | 2,576 | 257.60 |

On August 2, 1983, respondent timely mailed a notice of deficiency to petitioners at their last known address, determining a deficiency in income taxes for the taxable year 1978 in the amount of $27,757.60.

Petitioners now concede that the figures above reflect a computational error, and that the refrigeration unit and extra cooler equipment had costs to petitioners of $38,774 and $12,673, respectively, triggering a potential ITC of $5,144.70. With the credit attributable to the carpet, petitioners now claim a total potential ITC of $5,402.30. But see note 2 below.

Petitioners concede that the lease arrangement between themselves and E & F does not meet the "noncorporate lessor" provisions of section 46(e)(3)(B), but contend they fall within the provisions of section 46(e)(3)(A). Also, they have conceded certain adjustments in the notice of deficiency. Respondent concedes that all of the property is section 38 property, as defined in section 48.

OPINION

Sections 38 and 46, among other things, allow Federal income tax credits for investments in certain tangible personal property, referred to as "section 38 property" and defined in section 48(a). Respondent agrees that the refrigeration unit, extra cooler equipment, and office carpet are

"section 38 property." Section 46(e)(3), however, limits the availability of the credit with the following pertinent language:

(3) NONCORPORATE LESSORS.—A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—
    (A) the property subject to the lease has been manufactured or produced by the lessor * * *

Section 1.46-4(d)(1)(i), Income Tax Regs., has amplified the above by providing that the section 38 credit is available to a noncorporate lessor of property only if—

(i) Such property has been manufactured or produced by the lessor in the ordinary course of his business * * *

In enacting section 46(e)(3), Congress was concerned that individuals might be tempted to use investment credits to finance the acquisition and leasing of depreciable property as tax shelters. S. Rept. 92-437 (1971), 1972-1 C.B. 559, 583; H. Rept. 92-533 (1971), 1972-1 C.B. 498, 513. Thus, Congress tried to make investment credits available only to those noncorporate lessors actually using the property in question in an active business. These were determined to be lessors who had themselves manufactured or produced the property, and short-term lessors. Conversely, Congress wanted to deny investment credits to purchaser-lessors involved in mere financing arrangements without the risks and obligations associated with an ongoing trade or business. *Carlson v. Commissioner*, 79 T.C. 215, 221 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); *Ridder v. Commissioner*, 76 T.C. 867, 872 (1981). Our task is to determine whether petitioner manufactured or produced the property for which a credit is sought.

Petitioner contends that he fits within section 46(e)(3)(A). He does not claim to have personally manufactured or produced the cooling equipment or carpeting. He argues instead that by virtue of his control over the construction of the warehouse, he shouldbe deemed to have manufactured or produced the component parts of the warehouse for which a credit is sought.[2] Petitioner argues further that

---

[2] On brief, petitioner defines the property for which he seeks a credit as "certain 'refrigeration unit' and 'extra cooler equipment.'" Whether or not we understand him to

because his ordinary business is the marketing of alcoholic beverages, and the warehouse is an integral part of that business, the cooling equipment and carpeting were manufactured or produced in the ordinary course of petitioner's business.

Respondent contends that petitioners cannot claim the credit because they did not participate physically in the labor necessary for the construction/manufacture of either the section 38 property or of the warehouse as a whole. Respondent argues alternatively that if petitioners need not have constructed the section 38 property themselves, their control over its manufacture was too attenuated to bring them within the statute. Respondent further argues that if petitioners did manufacture or produce the property, it was not in the ordinary course of business.[3]

Section 46(e)(3)(A) requires that "the property subject to the lease" be manufactured or produced by the noncorporate lessor for the credit to be allowed to him. Petitioner's argument that his limited supervision of the construction of the *warehouse* meets this test would require a reading of these words to include all the property subject to the lease. We decline to adopt such a reading of the statute. We construe these words instead to refer only to the *property for which a credit is sought*, i.e., the section 38 property.

Petitioners have cited no precedent and we have found none, for looking to the *entire* property subject to the lease (i.e., the warehouse) for the "manufactured or produced" requirement. Section 46(e)(3), by its own terms, sets out the requirements for noncorporate lessors to take a credit "allowed by section 38." Further, our interpretation is borne out by the language of section 1.46-4(d), Income Tax Regs.:

---

abandon his contention that the "office carpet" is eligible for the credit is immaterial in light of the disposition of this case.

[3]Respondent does not argue that petitioner entered into the lease for tax reasons bereft of independent business reasons. Indeed, such an argument standing alone would have little force where Congress has laid down statutory standards, by which we must determine whether tax or business motives predominate. If we find neither of the standards met, however, the presence or absence of valid business reasons of petitioner for entering into the leasing transaction in question is wholly irrelevant. *Carlson v. Commissioner*, 79 T.C. 215, 225 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); see also *Miller v. Commissioner*, 85 T.C. 1055 (1985).

(d) *Noncorporate lessors.* (1) In the case of a lease entered into after September 22, 1971, *a credit is allowed under section 38* to a noncorporate lessor of *property* with respect to *the leased property* only if—

(i) *Such property* has been manufactured or produced by the lessor in the ordinary course of his business * * *

[Emphasis supplied.]

It seems indisputable that in each instance the word "property" is intended to refer to the property for which the section 38 credit is allowed. We decline to enlarge the scope of the "manufactured or produced" inquiry beyond examining the property for which a credit is sought. This is especially appropriate where, as here, the larger "property subject to the lease" is a building, a type of property specifically excluded from the credit by section 48(a).

We turn now to an examination of whether petitioners manufactured or produced the section 38 property subject to the lease. We are persuaded that they did not.

In *Carlson v. Commissioner,* 79 T.C. 215 (1982), affd. 712 F.2d 1314 (9th Cir. 1983), we stated that in determining whether property was manufactured or produced by the taxpayer under section 46(e)(3)(A):[4]

[taxpayer] would have to be either the one who actually manufactured the [property] or the one who at least controlled the details of manufacture of the [property] to satisfy section 46(e)(3)(A) * * * [*Carlson v. Commissioner,* 79 T.C. 215, 222(1982), affd. 712 F.2d 1314 (9th Cir. 1983).]

Clearly, petitioners did not actually manufacture the section 38 property in the ordinary sense of the word. The materials used by the contractor, Evans, in construction of the refrigeration unit and the extra cooler equipment, along with the office carpet, were obtained from third parties in which petitioners held no economic interest. A further inquiry, however, is whether petitioners controlled the details of manufacture of the subject property.

Of the factors considered in *Carlson v. Commissioner, supra* at 224, the most significant (i.e., provision of the specifications, and selection, instruction, and supervision of workers) are absent here.

[4]In *Carlson,* our analysis was applied to the question of the "ordinary course of business" test in the regulation. The *Carlson* factors, however, are equally appropriate to the "manufactured or produced, language of the statute. In light of our holding today, we need not reach the "ordinary course of business" issue.

The parties disagree over the first of these four, i.e., who provided the specifications of construction. It is stipulated that warehouse specifications were to be approved by Miller, the refrigeration unit and extra cooler equipment were installed pursuant to the specifications of Miller, and Miller representatives conducted weekly on-site inspections. The record contains only one listing of specifications, however, and apparently that list was compiled by the builder, Evans, with some references to Miller's specifications.

Petitioners cite *Lykes Bros. Steamship Co. v. United States*, 206 Ct. Cl. 354, 513 F.2d 1342 (1975), as relevant to this important factor. We are prevented from meaningful analysis under that case, however, by an insufficient record. This record does not allow us to compare how different the specifications of the finished section 38 property were from the specifications as proposed by both Miller and E & F. Nor are we apprised of the extent to which the suggestions, if any, made by the Miller representatives at weekly meetings were adopted or rejected.

Petitioners have the burden of proof on this factor. *Welch v. Helvering*, 290 U.S. 111 (1933); Rules 142(a), 122(b). In light of the stipulated facts, they have not established that they, and not Miller, provided the specifications of construction.

None of the three other most important *Carlson* factors (taxpayer selection, instruction and supervision of workers) are present in this case. Article 10 of the construction contract between petitioners and Evans stipulates that Evans shall provide and pay for all labor, shall supervise and direct the work, and shall be solely responsible for all construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the work under the contract. No evidence was presented to show petitioners' involvement in these functions, other than their weekly site visits. These visits, however, do not help petitioners here because they were for inspection purposes, not supervision.

In these circumstances, we are persuaded that petitioners did not control the details of manufacture of the section 38 property sufficiently to come within section 46(e)(3)(A). See

*Carlson v. Commissioner, supra.* We need not say that either Miller or Evans had the control. Suffice it to say that petitioners lacked that degree of control required under the statute.[5]

On the basis of this record, we find that petitioners did not manufacture or produce the property for which a credit is sought, and therefore,

*Decision will be entered for the respondent.*

---

[5]Even if the test were applied to the manufacture or production of the warehouse as a whole, rather than limited to the sec. 38 property, petitioners would not prevail under the *Carlson* analysis for the reasons cited above.