KENNETH H. MIYAMOTO AND CAROL SUE MIYAMOTO, ET AL., Petitioners [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent Miyamoto v. Commissioner
Docket Nos. 3555-83, 3748-83, 3749-83, 3750-83.
United States Tax Court
T.C. Memo 1986-313; 1986 Tax Ct. Memo LEXIS 287; 51 T.C.M. (CCH) 1550; T.C.M. (RIA) 86313; July 28, 1986. Mark Arth, for the petitioners. Mark A. Pridgeon and John C. Schmittdiel, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioners
Year
Deficiency
Kenneth H. Miyamoto
1977
$1,639.00
and Carol Sue Miyamoto
1978
$1,096.00
Robert W. Wagner
1978
$1,011.00
and Marcella E. Wagner
Paul S. Gray and
1977
$2,198.00
Jeanne R. Gray
1978
$2,392.00
David S. Guckenberg and
1977
$ 325.00
June E. Guckenberg
1978
$4,459.00
*288 The issues are (1) whether petitioners are precluded by section 46(e)(3)[2], pertaining to noncorporate lessors, from claiming an investment tax credit with regard to components of certain leased restaurant facilities and, if they are not so precluded, (2) whether certain of these components constitute section 38 property and are thus eligible for the investment tax credit. The facts have been fully stipulated. We set forth herein those facts pertinent to our decision. Petitioners Kenneth H. Miyamoto and Carol Sue Miyamoto resided in Bloomington, Minn., when they filed their petition herein. They filed joint Federal income tax returns for 1977 and 1978, listing their respective occupations as "Food Service (General Manager)" and "Housewife". Petitioners Robert W. Wagner and Marcella E. Wagner resided in Faribault, Minn., when they filed their petition herein. They filed a joint Federal income tax return for 1978, listing their respective occupations *289 as "Self Employed" and "Housewife". Petitioners Paul S. Gray and Jeanne R. Gray resided in Faribault, Minn., when they filed their petition herein. They filed joint Federal income tax returns for 1977 and 1978, listing their respective occupations as "Executive" and "Housewife". Petitioners David S. Guckenberg and June E. Guckenberg resided in Tonka Bay, Minn., when they filed their petition herein. They filed joint Federal income tax returns for 1977 and 1978, listing their respective occupations as "Certified Public Accountant" and "Secretary/Housewife" on their 1977 return, and as "Corporate Officer" and "Housewife/Secretary" on their 1978 return. [3]
During or prior to the years in issue, petitioners Kenneth H. Miyamoto, (herein, "Miyamoto") Paul S. Gray (herein, "Gray"), David S. Guckenberg (herein, "Guckengerg") and Robert W. Wagner (herein, "Wagner"), together with certain other individuals, entered into a total of seven partnerships *290 (herein referred to collectively as "the partnerships") as described herein. Gray, Guckenberg and Wagner entered into two partnerships during 1972, one entitled "Sandy's Investment Company of Fairmont" and the other "Sandy's Investment Company of Cloquet." Miyamoto, Gray, and Guckenberg entered into one partnership during 1976, entitled "Mason City Division, North Central Food Systems Investment Company" and another during 1977, entitled "Crookston Division, North Central Food Systems Investment Company." Miyamoto, Gray, Guckenberg and Wagner entered into two partnerships during 1975, one entitled "Grand Forks Division, Central Foods Systems Investment Company" and the other, "Superior Division, Central Foods Systems Investment Company". They also entered into one partnership during 1978, entitled "North Central Food Systems Investment Co., Hutchinson Division." The partnership agreements for two of the partnerships, Sandy's Investment Company of Fairmont and Sandy's Investment Company of Cloquet, provided, in relevant part, as follows: The purpose of this Partnership is to acquire for investment, receive title to certain real estate located in * * * [a specified location], *291 and to conduct the operation of leasing such real estate to others. The partnership agreements for the five remaining partnerships provided, in relevant part, as follows: The purpose of this Partnership is to acquire for investment, receive title to certain real estate located in * * * [a specified location] and to conduct the operation of leasing such real estate to others, or to operate a retail fast food franchise thereon. The partnership agreements do not indicate that any of the partnerships had as a business purpose the construction, manufacture or production of fast food franchise restaurant buildings or their components. Each of the seven partnerships owns and leases a Hardee's fast food restaurant to North Central Food Systems, Inc. [4], a corporation which operates the restaurant under a franchise from Hardee's Food Systems Inc., of Rocky Mount, North Carolina (herein, "Hardee's Food Systems"). Hardee's Food Systems strives to achieve a uniform style and appearance with respect to the buildings housing the restaurants operated by its franchisees and, to this end, supplies detailed construction drawings and specifications for such buildings. These drawings and specifications *292 were used in the construction of the seven restaurant buildings owned and leased by the partnerships. The record contains copies of agreements pertaining to the construction of three of the seven restaurant buildings. The first of these is entitled "Construction Contract Agreement for the Construction of a Hardee's Family Restaurant." This agreement, which calls for the construction of a Hardee's restaurant to Crookston, Minnesota, is dated August 19, 1977, and is between "North Central Foods Systems, Inc., a corporation" as the owner, [5] and Bear Construction, Inc., of Grand Forks, North Dakota as the contractor. Article II thereof provides, in relevant part, as follows: It is agreed by and between the parties: * * * (a) That the work included in this contract is to be done under the direction of the DIRECTOR OF CONSTRUCTION *293 OF HCC CONSTRUCTION & EQUIPMENT CO. (hereinafter called "Director of Construction") and that his decision as to the true meaning of the contract documents shall be final; [6]
(b) That for the purposes of the general conditions incorporated herein the Director of Construction shall be considered the Architect (the services of the Director of Construction shall be paid for by the OWNER); * * * (f) That neither Hardee's Food Systems, Inc., nor its subsidiaries shall have a voice in the selection, discharge, supervision or control of Contractor's servants, representatives, or sub contractors, or in fixing their number, compensation, or period of hours of service, nor shall it have any right to direct or instruct Contractor in the method of performance or the means of accomplishing the desired result except to the extent that a particular method is specified in this contract or in any specifications which are made a part hereof. (g) The contractor shall assign a job superintendent to this project when the work on this project is begun and the same job superintendent shall continue supervision of the work on this project until all work is completed or the contractor obtains written *294 approval of changing job superintendent from HCC Construction and Equipment and the Director of Construction or original job superintendent is fired for good cause. This agreement also contains provisions relating to the contract price, time for completion, events of default, and various covenants of the contractor. Of the two remaining construction agreements in the record, the first is dated as of May 1, 1978, and is between "Sandy's Investment Co. of Cloquet" as the owner and Paul S. Gray Co., Inc. as the contractor. [7] It designates the project as "renovation and addition to" a Hardee's restaurant in Cloquet, Minn. The *295 second is dated as of June 6, 1978, and is between "Hardees Investment Co., of Hutchinson" [8] as the owner and Paul S. Gray Co., Inc. as the contractor. It designates the project as a new Hardee's Restaurant in Hutchinson, Min. Each of these two contracts is entitled "Standard Form of Agreement Between Owner and Contractor" and is a standard form contract produced by the American Institute of Architects (AIA Document A101). Each is a four page document containing brief provisions relating to, among other things, the work, time of commencement, the contract sum, progress payments, and final payment. [9] Such agreements do not contain any provision concerning the owner's rights of control, if any, over the construction process. *296 Each of the Hardee's restaurant buildings leased by the partnerships to North Central Foods Systems, Inc., contains various components. The parties agree that one of the restaurant buildings, located at Hutchinson, Minn. (herein, the "Hutchinson restaurant"), is representative of the others, and they have submitted detailed information pertaining thereto. The following table shows the various components of the Hutchinson restaurant, and their related costs. Description of Property
Cost Claimed
Parking Area Lighting
1,829
Decorative Divide Walls
587
Menu Board and Framing and Electric
749
Drive Up Window
526
Safe Installation
74
Lay in Acoustical Ceiling
3,559
Identity Soffit and Mansard
6,479
Sanitary Finishes
8,913
Cabinets and Counters
2,595
Toilet Room Accessories/Partitions
1,629
Kitchen Plumbing System
4,465
Drink Tubing Sleeves
848
Kitchen Exhaust Fans
1,652
Kitchen Make-Up Air System
4,306
Decorative Light Fixtures
1,154
Accent Light Fixtures
2,782
Battery Pack Lights
419
Kitchen Equipment Electrical
5,850
Cash Register Electrical
158
Sign Electrical
2,467
Signage
2.675
Total
[10] 53,716
*297 On their Federal income tax returns for the years in issue, petitioners claimed an investment tax credit based upon the costs relating to the foregoing components of the Hutchinson restaurant, as well as similar components of the six other restaurant buildings owned by the partnerships and leased to North Central Foods Systems, Inc. By statutory notices of deficiency issued on November 23, 1982, respondent determined that petitioners were precluded from claiming the credit by reason of the provisions of section 46(e)(3), pertaining to noncorporate lessors. Alternatively, respondent determined that petitioners had failed to provide a cost allocation of any property qualifying for the credit, and further, that the items of property for which the credit had been claimed consisted of structural components of a building and, as such, were ineligible for the investment tax credit. In the instant proceedings, respondent concedes that some of the components of the restaurants are section 38 property and, as such, are eligible for the credit. However, he adheres to his position that petitioners are precluded from claiming any credit whatsoever by reason of section 46(e)(3).Thus, we must *298 first determine whether petitioners are precluded by that section from claiming the investment tax credit with respect to components of the restaurants leased by the partnerships to North Central Foods Systems, Inc. If we determine that petitioners are not so precluded, we must determine whether the various components of the restaurants consist, to an extent greater than that conceded by respondent, of section 38 property eligible for the investment tax credit. Under section 38, there is allowed a credit against tax with respect to a taxpayer's investment in certain qualifying property, known as section 38 property. However, section 46(e)(3) restricts the availability of the credit in the case of noncorporate lessors of property. It provides, in relevant part, as follows: SEC. 46(E)(3). NONCORPORATE LESSORS. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking *299 into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. * * * Petitioners are seeking an investment tax credit with respect to property leased by the partnerships (i.e., noncorporate entities) of which they were partners. Thus, under the provisions of section 46(e)(3), petitioners may claim the credit only if the requirements of either section 46(e)(3)(A) or section 46(e)(3)(B) are satisfied. Petitioners contend that they have satisfied the requirements of section 46(e)(3)(A), under which the credit will be allowed if "the property subject to the lease has been manufactured or produced by the lessor." [11] Therefore, we must determine whether the leased property was manufactured or produced by the partnerships within the meaning of section 46(e)(3)(A). *300 Section 46(e)(3)(A) was first construed by this Court in Carlson v. Commissioner,79 T.C. 215 (1982), affd. 712 F.2d 1314 (9th Cir. 1983). Therein, the taxpayer sought an investment tax credit with respect to certain apple-picking bins leased by him to a third party. The issue was whether the taxpayer had manufactured or produced the bins within the meaning of section 46(e)(3)(A). In resolving this issue, the Court looked to the legislative purpose behind the statute, and found that, in enacting section 46(e)(3), [12] Congress intended to deny the investment tax credit to noncorporate lessors who have merely retained passive investment or financing risks, as opposed to having assumed the risks and obligations usually associated with an active business. Carlson v. Commissioner,supra at 221, citing Ridder v. Commissioner,76 T.C. 867, 872 (1981). We observed that, consistent with this legislative intent, section 1.46-4(d)(1)(i), Income Tax Regs., provides that a credit is allowed under section *301 38 to a noncorporate lessor of property if "such property has been manufactured or produced by the lessor in the ordinary course of his business." Construing the language of the statute and regulations in light of Congress' legislative purpose, the Court held that property is not transformed into "property manufactured by the lessor" simply because the lessor pays the costs and expenses associated with manufacturing it. Rather, in order for the provisions of section 46(e)(3)(A) to be satisfied, the lessor must be involved with the manufacturing or production process by being either the one who actually manufactured or produced the property in issue, or the one who at least controlled the details of manufacture or production. Carlson v. Commissioner,supra at 222-223. In Carlson, the apple-picking bins leased by the taxpayer had been ordered in a partly assembled condition by the lessee *302 from a third party and delivered to the lessee's place of business. Assembly of the bins was completed by workmen selected by the lessee's general manager. These workmen, who received no instructions from the taxpayer, finished the assembly of the property on the lessee's premises and were paid directly by the lessee which, in turn, was reimbursed by the taxpayer. There was no evidence that the taxpayer was present at any time to supervise the workmen in assembling the bins or that he even inspected the bins to determine whether they were properly assembled. In light of these facts, the Court concluded that the apple-picking bins had not been manufactured or produced by the taxpayer within the meaning of section 46(e)(3)(A) since the taxpayer had not shown sufficient involvement in the assembly thereof. Accordingly, the taxpayer was held to be precluded from claiming the investment tax credit for the bins by section 46(e)(3). More recently, section 46(e)(3)(A) was again interpreted by this Court in Egizii v. Commissioner,86 T.C. 450 (1986). Therein, the taxpayers sought an investment tax credit with respect to certain components of a warehouse owned by them *303 and leased to their wholly owned corporation, which operated a beverage distributorship. Respondent conceded that the warehouse components for which the taxpayers had claimed the investment tax credit were section 38 property, but argued that the taxpayers were precluded from claiming the credit for such property by reason of section 46(e)(3). The taxpayers contended, however, that they had satisfied the requirements of section 46(e)(3)(A). In deciding whether the taxpayers were entitled to the credit with respect to the warehouse components, the Court first noted that the property leased by the taxpayers included both section 38 property (the specific components) and nonsection 38 property (the warehouse building itself). It was therefore necessary to consider the scope of section 46(e)(3)(A) and to determine precisely which property was required thereunder to have been "manufactured or produced by the lessor." The Court concluded that, for purposes of section 46(e)(3)(A), the property which must be "manufactured or produced by the lessor" is that property which is claimed to be section *304 38 property and for which the investment tax credit is sought by the taxpayer. Accordingly, the relevant inquiry was found to be whether the taxpayers had manufactured or produced those components of the warehouse which consisted of section 38 property, and not whether they had constructed the warehouse building itself. In resolving this inquiry, the Court applied the principles set forth in Carlson v. Commissioner,supra.It found that the taxpayers had entered into a contract for the construction of the warehouse facility. They had weekly contacts with the contractor's supervisory personnel concerning the status of construction, attended weekly on-site inspections, and consulted from time to time with the architect to ascertain that construction was being completed pursuant to the contract specifications. However, they were not involved in the actual construction of the warehouse or its component parts, nor were they present from day to day at the construction site. Moreover, the taxpayers had not shown that they furnished the specifications for the components, nor had they selected, instructed or supervised workers. Based upon these facts, the Court held *305 that the taxpayers had not sufficiently controlled the manufacture of the components which were section 38 property so as to satisfy the provisions of section 46(e)(3)(A). Egizii v. Commissioner,supra at 455-458. With the foregoing considerations in mind, we now consider whether petitioners have satisfied the requirements of section 46(e)(3)(A) and are thus entitled to an investment tax credit with respect to the components of the restaurants owned and leased by the partnerships. Petitioners bear the burden of proving their entitlement to the claimed credit. See Uecker v. Commissioner,81 T.C. 983, 998 (1983), affd. per curiam on another issue 766 F.2d 909 (5th Cir. 1985); Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969); Rule 142(a). In order to show that the requirements of section 46(e)(3)(A) have been satisfied, petitioners must, under the rationale of Egizii v. Commissioner,supra, and Carlson v. Commissioner,supra, *306 show that the partnerships manufactured or produced, or controlled the manufacture or production of, the specific components purporting to be section 38 property, and not merely that they constructed or controlled the construction of the restaurant buildings housing such property. The record, however, contains no evidence pertaining to the manufacture or production of the specific restaurant components claimed by petitioners to be section 38 property, or to the partnerships' control or lack of control with respect thereto. On such a record, we certainly cannot say that the partnerships manufactured or produced, or controlled the manufacture or production of, the components in question. Thus, we must conclude that petitioners have failed to carry their burden of proof in this regard. Furthermore, to the extent that manufacture of the components of the restaurants may have been accomplished by means of the construction [13] of the restaurant buildings themselves, we find that petitioners have not established that the partnerships controlled the construction of such buildings in the ordinary course of their business within the meaning of section 46(e)(3)(A) and section 1.46-4(d)(1)(i) Income Tax Regs. *307 The partnership agreements do not indicate that such entities intended to construct restaurant buildings in the ordinary course of their business. The restaurant buildings in question were constructed by independent contractors [14] pursuant to specifications furnished by Hardee's Food Systems, an unrelated corporation. None of the construction agreements in evidence specifies the right of the partnerships, if any, to control the construction process. Indeed, the most detailed of these agreements, which pertains to the construction of a restaurant at Crookston, Minn., and to which the relevant partnership is not even a party, appears to vest control over the construction process in the contractor and in the party designated as the Director of Construction, (HCC Construction and Equipment Co.), whose relationship to the partnerships, if any, is not reflected in the record. The record also fails to show that the partnerships in fact took an active role in the construction process. There is, for example, no evidence that the partnerships selected, instructed or supervised workers, maintained a regular presence at the construction sites, or otherwise were involved in the construction *308 process to any meaningful extent. In short, the record fails to show that the partnerships controlled the construction of the restaurant buildings in the ordinary course of business. Cf. Carlson v. Commissioner,supra;Egizii v. Commissioner,supra;sec. 1.46-4(d)(1)(i), Income Tax Regs.[15]
*309 Based upon the record herein, we find that petitioners have not shown that the partnerships controlled the manufacture or production of the restaurant components claimed by them to be section 38 property, and we thus conclude that petitioners have failed to carry their burden of proving that the provisions of section 46(e)(3)(A) have been satisfied. [16] We therefore hold that petitioners are precluded by section 46(e)(3) from claiming an investment tax credit with regard to the various restaurant components. In light of this holding, we need not determine the extent to which the various components of the restaurants in issue constitute section 38 property. *310 To reflect the foregoing, Decisions will be entered for respondent.
Footnotes
1. Cases of the following petitioners are consolidated herwith: Robert W. Wagner and Marcella E. Wagner, docket No. 3748-83; Paul S. Gray and Jeanne R. Gray, docket No. 3749-83; and David S. Guckenberg and June E. Guckenberg, docket No. 3750-83.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Both petitioners Paul S. Gray and Jeanne R. Gray and petitioners David S. Guckenberg and June E. Guckenberg filed amended returns for 1978. The propriety of the adjustments set forth in these amended returns is not in issue herein.↩
4. A letter contained in one of the exhibits to the stipulation of facts indicates that petitioner David S. Guckenberg is president of North Central Food Systems, Inc. The record does not otherwise contain evidence concerning the relationship, if any, between North Central Food Systems, Inc., and the various partnerships or the individual partners.↩
5. The parties have stipulated that all of the restaurant buildings are owned and leased by the partnerships to North Central Food Systems, Inc. However, the contract concerning the construction of the restaurant at Crookston, Minn., lists the owner thereof as "North Central Foods Systems Inc.", and that entity is a party to the contract. The reason for this discrepancy is not apparent from the record. ↩
6. The record does not show the relationship, if any, between HCC Construction and Equipment Co. and the partnerships or individual partners herein.↩
7. Petitioner Paul S. Gray is president of Paul S. Gray Co., Inc. ↩
8. We assume that this entity is the same as "North Central Foods Systems Investment Co., Hutchinson Division", the partnership entered into by Miyamoto, Gray, Guckenberg and Wagner in 1978, but the record is not explicit on this point. ↩
9. Although the terms of certain other documents (e.g. "General Conditions AIA Document A201") appear to be incorporated by reference into these agreements, such other documents have not been made part of the record herein.↩
10. By means of a supplemental stipulation of facts filed after submission of this case, the parties set forth similar cost information pertaining to the components of the restaurant buildings at locations other than Hutchinson, Minn.↩
11. Petitioners do not assert that the tests set forth in sec. 46(e)(3)(B)↩ are satisfied.
12. The relevant section was enacted by Congress as part of Pub. L. 92-178, 85 Stat. 497, and was originally designated as sec. 46(d)(3). It was redesignated as sec. 46(e)(3)↩ by Pub. L. 94-12, 89 Stat. 26, effective for taxable years ending after December 31, 1974.
13. In the context of sec. 46(e)(3)(A), the terms "manufacture" and "production" include the "construction" of property. See S. Rept. 92-437 (1971), 1972-1 C.B. 559↩, 583. 14. The fact that property is constructed or manufactured by an independent contractor does not, of itself, require a conclusion that such property has not been constructed or manufactured by the taxpayer. See Carlson v. Commissioner,79 T.C. 215, 224 (1982), affd. 712 F.2d 1314 (9th Cir. 1983). Under appropriate circumstances, wherein the taxpayer retains sufficient control over the construction process, the taxpayer may be considered to have constructed such property, even though the services of an independent contractor are used. Cf.Hawaiian Independent Refinery, Inc. v. United States;697 F.2d 1063, 1069 (Fed. Cir. 1983); Illinois Power Co. v. Commissioner,83 T.C. 842, 889-891 (1984), affd. on this issue 792 F.2d 683↩ (7th Cir. 1986). 15. This case was submitted to the Court on the basis of a fully stipulated record, and we have therefore reached our conclusion herein based upon those facts set forth in the stipulation of facts, the supplemental stipulation of facts, and the exhibits thereto (herein, the "stipulations"). However, petitioners rely in their briefs upon certain factual allegations which were not referred to in the stipulations, but rather, which were contained in attachments to their petitions and which respondent expressly denied in his answers. These included, for example, the allegation that petitioner Gray, who was president of Paul S. Gray Co., Inc., supervised the construction of the restaurants on behalf of the partnerships. We accord no weight to such allegations, since, under Rule 143(b), unadmitted allegations in pleadings and statements made in briefs are not evidence and, in this fully stipulated case, we consider those matters not contained in the stipulations to be without support in the record.↩
16. In their briefs, petitioners rely upon Duaine v. Commissioner,T.C. Memo 1982-39. Although the taxpayer in Duaine had claimed an investment tax credit with respect to certain components of leased restaurant facilities, we consider that case to be inapposite to the instant case since the Court did not there have before it, as it does herein, the issue of whether the property in question had been manufactured or produced by the lessor under sec. 46(e)(3)(A). Petitioners also cite Lykes Bros. Steamship Co. v. United States,206 Ct. Cl. 354, 513 F.2d 1342 (1975); Pacific Far East Line, Inc. v. United States,206 Ct. Cl. 378, 513 F.2d 1355 (1975); and Public Service Co. of New Mexico v. United States,431 F.2d 980 (10th Cir. 1970). Although these cases involved the issue of whether, for purposes of the investment tax credit, the taxpayers had constructed, or instead, had acquired certain property, they did not arise in the context of sec. 46(e)(3)(A). See also Hawaiian Independent Refinery, Inc. v. United States,697 F.2d 1063 (Fed. Cir. 1983); Illinois Power Co. v. Commissioner,83 T.C. 842 (1984), affd. on this issue 792 F.2d 683 (7th Cir. 1986). Accordingly, such cases are less relevant herein than Carlson v. Commissioner,supra, and Egizii v. Commissioner,supra, both of which interpreted and applied section 46(e)(3)(A). Furthermore, in each of the cases cited by petitioners, the fundamental inquiry was, as here, whether the taxpayers had exercised control over the construction process. See Illinois Power Co. v. Commissioner,83 T.C. at 889-890. We do not consider the principles set forth in these cases to be significantly different from those set forth in Carlson v. Commissioner,supra, which we have followed herein, and which itself relied upon Lykes Bros. Steamship Co. v. United States,supra, for analogous support in interpreting sec. 46(e)(3)(A). Carlson v. Commissioner,supra↩ at 222. Accordingly, we do not read the cases cited by petitioners to require a result contrary to that reached by us herein.