HENRY FAULKNER, JR., AND ELAINE FAULKNER AND
SUPREME LEASING COMPANY, INC., PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 17841-84.      Filed March 17, 1987.

*Edward L. Baxter*, for the petitioners.
*David M. Kuchinos* and *Ina S. Weiner*, for the respondent.

## OPINION

GERBER, *Judge*: This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts and attached exhibits are incorporated herein by reference. We are asked to consider whether sections 46(e)(3) and 46(c)(8) apply to restrict the passage of investment tax credit from a "qualified" corporate lessor to a "subchapter S" corporation or noncorporate lessee/sublessor.[2]

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure and, unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[2] We assume that the parties consider lessor to be a qualified corporate lessor (i.e., that it would be entitled to claim the investment tax credit in its own right in an amount determined under secs. 46 through 50). No issue has been raised with respect to the corporate lessor's qualifications and the parties have stipulated that the corporate lessor has met all requirements of sec. 48(d).

Petitioners are Henry Faulkner, Jr. (petitioner), and Elaine Faulkner,[3] individuals with legal residence at the time of filing the petition in Huntingdon Valley, Pennsylvania, and Supreme Leasing Co., Inc. (Supreme),[4] a corporation organized under the laws of the State of Pennsylvania and doing business at the time of filing in Philadelphia, Pennsylvania.

During the years in issue, Supreme was an electing small business corporation within the meaning of section 1371(b). Petitioner was the sole shareholder of Supreme in 1980, and held 100 of 125 issued and outstanding shares of Supreme in 1982. Both petitioner and Supreme were calendar year taxpayers during the years at issue. Petitioner used the cash receipts and disbursements method of accounting; Supreme used the accrual method.

Respondent issued a statutory notice of deficiency to petitioner pertaining to his 1980 tax year, based upon 1980 adjustments and certain claimed investment tax credit (ITC) carrybacks from 1982 to 1980. Respondent also issued a statutory notice of deficiency to Supreme pertaining to its 1980 tax year, determining that $24,581.84 of investment tax credit claimed for that year was to be recaptured.[5]

During the years at issue, Supreme was in the business of leasing automobiles. In 1980, Supreme leased some cars from Genway Corp. (Genway),[6] and leased the same cars to its customers on terms generally prescribed by Genway (the 1980 cars).[7] In 1982, Supreme leased cars from Genway (the 1982 Genway cars), which Supreme then leased to its customers under long-term leases.[8]

---

[3]Elaine Faulkner is a party to this matter solely by reason of having filed joint returns with her husband during the years in issue.

[4]Supreme Leasing Co., Inc., is a petitioner in this case, but will be referred to as "Supreme" for clarity.

[5]The parties now agree that no ITC is required to be recaptured by Supreme for its 1980 tax year.

[6]The parties have stipulated that Genway is one of the leading automobile lessors in the United States.

[7]The 1980 cars were new sec. 38 property in the hands of Genway, and would have constituted new sec. 38 property to Supreme if Supreme had actually purchased them. They had a fair market value of $605,988.

[8]The 1982 cars were new sec. 38 property in the hands of Genway. The original use of the 1982 Genway cars commenced with Genway, and would have constituted new sec. 38 property to Supreme if Supreme had actually purchased them. The 1982 cars had a fair market value of $344,803.

Supreme also purchased automobiles from Henry Faulkner, Inc., in 1982. Supreme leased some of these cars to its customers on a day-to-day basis (the 1982 daily rental cars), and the remainder to its customers under long-term leases (the 1982 leased cars).[9]

Pursuant to section 48(d), Genway elected to pass through to Supreme the ITC on the 1980 cars and the 1982 Genway cars.[10] The election was filed in accordance with section 1.48-4(f) and (g), Income Tax Regs.

Accordingly, with respect to the 1980 cars, petitioner claimed an ITC on his 1980 tax return in the amount of $17,624.[11] Petitioner also claimed an ITC carryback from his 1982 tax year to his 1980 tax year in the amount of $236,044.[12] When applied to petitioner's 1980 tax year, the carryback would result in a $68,807 overpayment by petitioner.

During 1982, Supreme paid Genway $70,871 in rental payments on the 1982 Genway cars,[13] and was "actively engaged in equipment leasing" within the meaning of section 465(c)(4)(A).[14]

The parties have stipulated that Genway made a valid section 48(d) election. The parties have also stipulated that the five enumerated requirements in section 1.48-4(a)(1), Income Tax Regs., have been met.[15] The issue for our consideration is whether Supreme (as a lessee/sublessor)

---

[9]The total cost of purchased automobiles was $4,399,766. Of this amount, $231,392 was attributable to the 1982 daily rental cars, and $4,168,374 was attributable to the 1982 leased cars.

[10]For 1982, Genway was not a person referred to in sec. 46(e)(1).

[11]With respect to the 1980 cars, on its 1980 tax return Supreme claimed a cost basis for new sec. 38 property available for the ITC (with a life of 3 or more but less than 5 years) in the amount of $528,708. As a result of his 100-percent ownership in Supreme in 1980, petitioner claimed the same item on his 1980 tax return, resulting in a claimed qualified investment of $176,236.

[12]This carryback was claimed by reason of petitioner's 80-percent ownership in Supreme.

[13]Neither petitioner nor Supreme borrowed any amounts with respect to the 1982 Genway cars.

[14]During 1982, Supreme was a corporation described in secs. 465(a)(1)(B) and 465(a)(1)(C).

[15]E.g., that the cars were sec. 38 property in the hands of Genway; that the cars were new sec. 38 property in the hands of Genway, and that their original use commenced with Genway; that the cars would have constituted new sec. 38 property to Supreme if Supreme had actually purchased them; that the statements of the sec. 48(d) election were filed in the manner and within the times provided in paragraph (f) or (g) of sec. 1.48-4, Income Tax Regs.; and that Genway was not a person described in sec. 46(e)(1).

must independently qualify for the claimed ITC passed through by Genway's section 48(d) election.[16]

Both petitioners and respondent focus on a plain reading of the statute and regulations, but they construe the language differently. Petitioners contend that the five enumerated requirements in section 1.48-4(a)(1), Income Tax Regs., are exclusive and that these requirements have been met. Respondent, however, interprets the reference to the credit "allowed by section 38" in section 48(d) and the regulations thereunder as causing the lessee to be subject to the requirements of sections 46 through 50 (the rules for computing credit for investment in certain depreciable property). Additionally, respondent argues that the sections concerning the ITC must be read in pari materia, citing *Estate of Sanford v. Commissioner*, 308 U.S. 39 (1939),

This is a case of first impression. Neither petitioners nor respondent have cited any cases directly on point,[17] nor does either party find the legislative history to be conclusive. Accordingly, as do the parties, we look to the statutes and regulations for guidance.

The ITC provisions were enacted expressly to encourage investment in so-called "qualified property" or certain depreciable property, and we have held that the ITC provisions are to be liberally construed. *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278 (1975); *Northville Dock Corp. v. Commissioner*, 52 T.C. 68 (1969); *Catron v. Commissioner*, 50 T.C. 306 (1968). Subject to specified limitations, section 48(d) allows certain lessors to elect to treat the lessee as having acquired such property.

Section 48(d) provides in pertinent part:

(1) GENERAL RULE.—A person * * * who is a lessor of property may (at such time, in such manner, and subject to such conditions as are provided by regulations prescribed by the Secretary) elect with respect to any new section 38 property (other than property described in paragraph (4)) to treat the lessee as having acquired such property * * *

---

[16] The parties have stipulated that neither Supreme nor petitioner is otherwise entitled to the ITC claimed on the 1980 returns.

[17] Respondent cites to *Nelson v. Commissioner*, T.C. Memo. 1985-292, affd. 793 F.2d 179 (8th Cir. 1986). That case was fully stipulated, and the parties agreed for purposes of the case that sec. 46(e)(3) applied as a limitation in an analogous situation. The parties argued only whether the provisions of sec. 46(e)(3)(B) were satisfied. Our holding in *Nelson* is not dispositive of the issues in this case, however, and the parties' agreement there is neither helpful nor probative in deciding this case.

* * * * * * *

(3) LIMITATIONS.—The elections provided by paragraphs (1) and (2) may be made only with respect to property which would be new section 38 property if acquired by the lessee. For purposes of the preceding sentence and section 46(c), the useful life of property in the hands of the lessee is the useful life of such property in the hands of the lessor. If a lessor makes the election provided by paragraph (1) with respect to any property, the lessee shall be treated for all purposes of this subpart as having acquired such property. * * *

Additionally, section 1.48-4(a)(1), Income Tax Regs., provides in pertinent part:

Election of lessor of new section 38 property to treat lessee as purchaser.

(a) *In general*—(1) *Lessee treated as purchaser.* Under section 48(d), a lessor of property may elect to treat the lessee of such property as having purchased such property * * * for purposes of the credit allowed by section 38 if the following conditions are satisfied:

(i) The property must be "section 38 property" in the hands of the lessor * * *

(ii) The property must be "new section 38 property" * * * in the hands of the lessor, and the original use of such property must commence with the lessor. * * *

(iii) The property would constitute "new section 38 property" to the lessee if such lessee had actually purchased the property. * * *

(iv) A statement of election to treat the lessee as a purchaser has been filed in the manner and within the time provided in paragraph (f) or (g) of this section.

(v) The lessor is not a person referred to in section 46(d)(1) * * * .

* * * *If the conditions of this subparagraph have been met, the lessee shall be treated as though he were the actual owner of all or a portion of the property for purposes of the credit allowed by section 38. Thus, the lessee shall be entitled to a credit allowed by section 38 with respect to such property for the taxable year in which he places such property in service, and the lessor shall not be entitled to a credit allowed by section 38 with respect to such property* * * [Emphasis added.]

Respondent interprets the reference to the credit "allowed by section 38" in section 48(d) and the regulations thereunder as causing the lessee to be independently subject to sections 46 through 50. Specifically, respondent asserts that Supreme, as a lessee or sublessor, must independently satisfy sections 46(e)(3) and 46(c)(8) or that petitioner, as a lessee, likewise must satisfy those same sections. Respondent bases his assertions on a reading of section 48(d) and on the notion that the statutes at hand must be considered

in pari materia, citing *Estate of Sanford v. Commissioner*, 308 U.S. 39 (1939). Petitioners interpret the statute and regulations to permit a qualified lessor to pass the ITC to a lessee or successive lessee, as long as the requirements specified in section 48 and the regulations thereunder have been met and no matter whether any of the lessees would otherwise be entitled to claim the credit.

We agree with petitioners. We rest our conclusion on a plain reading of the statutes involved, and the legislative history behind section 46(e)(3) concerning section 48(d).[18]

We reject respondent's strained interpretation of the language of section 48(d) and section 1.48-4(a)(1), Income Tax Regs., as requiring a lessee to be independently qualified to claim the investment tax credit. If read alone, section 48(d) would produce the result petitioners seek. Furthermore, although there may be appropriate circumstances where various sections and subsections concerning the same subject matter are to be read in pari materia,[19] we refuse to do so in this case, where such construction basically would disable and render ineffective section 48(d). If respondent's arguments were correct, section 48(d) basically would be rendered moot.

Section 46(e)(3) requires "Noncorporate *lessors*" (emphasis added) either to have manufactured the property or to meet various time and percentage limitations in order to qualify for the ITC. Section 46(e)(3)(A) requires the noncorporate lessor to manufacture or produce the property; section 46(e)(3)(B) limits the allowable time that the property may be leased. A lessee/sublessor could not pass section 46(e)(3)(A), apart from a sale/leaseback situation. Similarly, section 46(c)(8)[20] subjects certain taxpayers claiming ITC's

---

[18]Sec. 46(e)(3) itself is a fairly technical provision which was intended to deny the ITC to purchaser-lessors who were involved merely in financing arrangements as opposed to active businesses. S. Rept. 92-437 (1971), 1972-1 C.B. 559, 583; H. Rept. 92-533 (1971), 1972-1 C.B. 498, 513. See *Egizii v. Commissioner*, 86 T.C. 450 (1986); *Carlson v. Commissioner*, 79 T.C. 215 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); *Ridder v. Commissioner*, 76 T.C. 867 (1981).

[19]For example, see Judge Wilbur's concurring opinion in *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278, 289 (1975), as supplemented by 67 T.C. 760 (1977), affd. 589 F.2d 1383 (10th Cir. 1978), cert. denied 442 U.S. 917 (1979).

[20]Sec. 46(c)(8) provides in pertinent part:

(8) LIMITATION TO AMOUNT AT RISK.—

    (A) IN GENERAL.—In the case of new or used section 38 property which—

        (i) is placed in service during the taxable year by a taxpayer described in section 465(a)(1), and

to the at-risk provisions of section 465.[21] A lessee/sublessor—or simply a lessee—would almost always fail this requirement as well.[22] Few lessee/sublessors could meet the requirements of section 46(e)(3), and even fewer, those of section 46(c)(8).[23]

Additionally, the legislative history behind section 46(e)(3) reflects a liberal policy to allow an ITC with respect to an acquisition in a section 48(d) election situation. Section 46(e)(3) was enacted as part of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, and, although neither the House report nor the Senate report addresses the issue at hand, the House report indicates that a lessor who does not qualify for an ITC may still elect to pass the ITC through to a qualifying lessee.[24] We think the qualification of the initial

---

(ii) is used in connection with an activity with respect to which any loss is subject to limitation under section 465,

the basis of such property for purposes of paragraph (1) shall not exceed the amount the taxpayer is at risk with respect to such property as of the close of such taxable year.

[21]Sec. 465 provides in pertinent part:

SEC. 465(a). LIMITATION TO AMOUNT AT RISK.—

(1) IN GENERAL.—In the case of—

(A) an individual,

(B) an electing small business corporation (as defined in section 1371(b)), and

(C) a corporation with respect to which the stock ownership requirement of paragraph (2) of section 542(a) is met,

engaged in an activity to which this section applies, any loss from such activity for the taxable year shall be allowed only to the extent of the aggregate amount with respect to which the taxpayer is at risk (within the meaning of subsection (b)) for such activity at the close of the taxable year.

Sec. 465(c) provides in pertinent part:

(1) * * * This section applies to any taxpayer engaged in the activity of—

      *       *       *       *       *       *       *

(C) leasing any section 1245 property (as defined in section 1245(a)(3)),

[22]Sec. 465(a)(1) applies to limit losses with respect to: (a) An individual, (b) an electing small business corporation (as defined in sec. 1371(b)), and (c) a corporation with respect to which the stock ownership requirement of paragraph (2) of sec. 542(a) is met. Sec. 465(c)(4) excludes sec. 465(a)(1)(C) corporate taxpayers engaged in certain equipment leasing activities from sec. 465(a).

Supreme is both a sec. 465(a)(1)(C) taxpayer and a sec. 465(a)(1)(B) taxpayer. Supreme argues, in the alternative, that even if sec. 46(c)(8) applies, sec. 465(c)(4) excepts Supreme from the at-risk rules. Because we find that sec. 46(c)(8) does not apply to limit the ITC claimed by petitioners, we need not address this argument.

[23]This section would, in fact, even preclude most lessees, regardless of any sublessor status, from receiving an ITC passthrough.

We note that sec. 48(d) was amended by the Deficit Reduction Act of 1984 to coordinate the at-risk rules with a sec. 48(d) election situation. Pub. L. 98-369, 98 Stat. 494, 805.

[24]In pertinent part, the report states:

"Even though an individual lessor under this provision of the bill is denied the credit, he may still elect to pass it through to the lessee. In this manner, the credit is not denied to the acquisition itself, but simply to the lessor. [H. Rept. 92-533, *supra*, 1972-1 C.B. at 513.]"

lessor is all that was contemplated under section 48(d). Accordingly, an election, such as the one at hand, by a qualified corporate lessor that passes the requirements of section 48(d) and the regulations thereunder will be valid.[25] Any other interpretation of these provisions would be anomalous.

We hold that Supreme is entitled to claim the ITC.

To reflect the foregoing and concessions of the parties,

*Decision will be entered under Rule 155.*

---

[25]Because of the parties' stipulations, we need not address whether Supreme fits the requirements of sec. 48(d) and sec. 1.48-4(a)(1), Income Tax Regs. We are cognizant of secs. 1.48-4(b) and 1.48-4(c), Income Tax Regs., which concern "original use" of property determinations by the lessor and lessee (see sec. 1.48-1(a)(1)(iii), Income Tax Regs.) and "Qualified investment" calculations of property (when valid sec. 48(d) elections are made). See *Comdisco, Inc. v. United States*, 756 F.2d 569, 578 (7th Cir. 1985); cf. *Illinois Valley Paving Co. v. Commissioner*, 687 F.2d 1043 (7th Cir. 1982), affg. a Memorandum Opinion of this Court. Because of the parties' stipulations, however, we need not consider these provisions. See p. 625 *infra*, and note 15.